MARKS et al. v. HOME FIRE & MARINE INS. CO. OF CALIFORNIA.

(Court of Appeals of District of Columbia. Submitted October 17, 1922. Decided January 2, 1923.)

No. 3780.

1. Insurance ☞668(4)—Verdict for defendant cannot be directed if there is any evidence to support recovery.

Where the defense to recovery on a policy insuring an automobile against fire was based on the clause prohibiting the use of the automobile for carrying passengers for hire, an instruction to the jury to find for the defendant should not have been given, if there was any evidence tending to show that the persons carried in the automobile were not passengers or were not carried for compensation.

2. Insurance ☞333(1)—"Passenger" is one carried in public conveyance; "used for carrying passengers."

A passenger in the legal sense is one who travels in a public conveyance by virtue of an expressed or implied contract with the carrier, as by the payment of fare or by that which is accepted as the equivalent thereof, so that an automobile is not used for carrying passengers within the meaning of a fire insurance policy, unless it is held out to the public as a means of conveyance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Passenger.]

3. Insurance ☞665(3)—Evidence held to warrant jury in finding persons carried in insured automobile were not passengers.

Testimony by the owner of the insured automobile that he had abandoned his purpose of engaging in the hacking business, after securing his license and identification card, and that the only money he had received for carrying persons in his automobile was in the case of relatives or friends, who voluntarily paid him after the transportation, held sufficient to warrant the jury in finding he did not transport passengers in the automobile, so that it was error to instruct a verdict for the insurance company.

Appeal from Supreme Court of the District of Columbia.

Action by Fred M. Marks and another against the Home Fire & Marine Insurance Company of California. Judgment for defendant on a verdict directed by the court, and plaintiffs appeal. Reversed and remanded.

L. A. Bailey, of Washington, D. C., for appellants.
J. D. Eason, Jr., of Washington, D. C., for appellee.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. The Home Fire & Marine Insurance Company insured against loss by fire the property interests of Fred M. Marks and the Hurley Motor Company in a certain automobile, and executed and delivered to the parties insured a fire insurance policy as evidence of the contract of insurance. On the policy of insurance there was indorsed and made a part thereof a condition which nullified the policy in case the automobile was used for carrying passengers for compensation, or rented or leased or operated in any race or speed contest, during the life of the policy.

The automobile was destroyed by fire on the 21st of December, 1919, whereupon the appellants presented to the insurance company their claim of loss, and made demand for the payment of the damage caused. The insurance company rejected the claim and refused payment on the ground that the policy was without effect, inasmuch as the automobile had been used for carrying passengers for compensation, in violation of the terms and conditions of the policy. Thereupon Marks and the Hurley Motor Company commenced an action at law to recover on the policy, and, issue having been joined, the case came on for trial before the court and a jury duly impaneled for the purpose.

On the part of the plaintiff, evidence was introduced tending to prove that Marks purchased the automobile primarily for the use of himself and family. Marks admitted that he also contemplated using the automobile for "hacking"—that is to say, for carrying passengers for hire—and that in pursuance of that purpose he secured a "hacker's" license together with a hacker's badge and an identification card. After procuring the hacker's license, however, Marks and his wife concluded that the use of the automobile for hacking would require time which might be better devoted to needed rest and recreation, and therefore the idea of hacking was abandoned.

Marks testified positively that he never wore the hacker's badge and never displayed the identification card. He admitted, however, that he took his aunt on a sight-seeing expedition, and that at the end of the trip, his aunt insisting, he accepted from her $16; that on two occasions between April 20 and August 10, 1919, he took his friend Burns, accompanied by others, to Marlboro, Md., where they had dinner together, and that on each occasion he received $10, which was the charge usually made by hackers for an automobile trip from Washington to Marlboro, Md.; that once between April 20 and August 10, 1919, he took some parties to Baltimore, and that he received for all four trips a sum not exceeding $50.

Marks also admitted that on December 26, 1919, he wrote a letter to the insurance company, in which he stated that he had hacked his car "three or four months back," as he had a license, but that at the time of the fire he was not hacking. He testified, however, that he never at any time "offered to use said automobile for carrying any person for compensation," and that he never asked his aunt or Burns or any one for money. He said that the moneys received by him were paid

to him without request or solicitation on his part. On this evidence the court instructed the jury to return a verdict for the defendant, to which instruction plaintiff's counsel excepted. The jury returned its verdict in accordance with the court's instruction, and thereupon judgment was entered in favor of the defendant and against the plaintiff for costs. From that judgment this appeal was taken, and plaintiff now contends that the automobile was not "used for carrying passengers for hire," and that the court erred in instructing the jury to find for the defendant.

[1] Whether the court erred in giving the instruction, to which exception was taken by the plaintiff, depends altogether on whether the carrying of *passengers* for compensation in the automobile was so conclusively established by the evidence as to leave no issue of fact for the determination of the jury. If there was any evidence whatever showing or tending to show that the persons carried were not passengers, or that they were not carried for compensation, the case should have been left to the jury, and the instruction to find for the defendant should not have been given.

[2] That persons were carried in the automobile, and that money was received for their transportation, is undisputed; but there was some evidence that the persons so carried were not passengers within the common, ordinary meaning of that term, when used to designate persons transported by conveyance from one place to another. A passenger is a person who travels in a *public* conveyance, as a railway car or steamship; one carried for fare by a *common carrier* (Standard and New Standard Dictionary); a traveler by some *established conveyance*, as a coach, steamboat, railroad train, etc. (Webster's New International Dictionary); one who travels in a *public* conveyance, especially, one who travels in such a conveyance by virtue of a contract express or implied with the carrier, as the payment of fare, or something accepted as an equivalent therefor; one who travels or is carried in some vessel or vehicle, especially on board ship or in a ferry or passage boat; later applied also to travellers by coach, and by railway, tramway, or the like; *now always with the implication of a public conveyance entered by fare or contract* (a New English Dictionary [Oxford] Edited by the Philological Society); One who has taken a place in a *public* conveyance, by virtue of a contract, for the purpose of being transported from one place to another, on the payment of fare or *its* equivalent (Bouvier's Law Dictionary). (Italics not quoted.) A passenger, in the legal sense of the word, is one who travels in some *public* conveyance by virtue of an express or implied contract with the carrier, as by the payment of a fare or by that which is accepted as the equivalent thereof. Pennsylvania R. R. Co. v. Price, 96 Pa. 256, 267; Eliz. S. Bricker v. Phila. & R. R. Co., 132 Pa. 1, 4, 18 Atl. 983, 19 Am. St. Rep. 585.

From these definitions it is apparent that only those persons who are transported from place to place in a *public* conveyance can properly be denominated as passengers. Some of the decisions have held that a person may be a passenger, whether or not he pays or contracts to pay a fare. Munsey v. Webb, 37 App. D. C. 185, 187; Dibbert v. Metro-

politan Investment Co., 158 Wis. 69, 73, 147 N. W. 3, 148 N. W. 1095, L. R. A. 1915D, 305, Ann. Cas. 1916E, 924. But no authority which we have been able to find, or to which our attention has been called, holds that a passenger is one who is carried by any conveyance. other than that which is held or offered for the use of the public.

[3] Marks originally intended to put the insured automobile at the service of the public, and that he might lawfully put that purpose into effect he secured a hacker's license, badge, and identification card. He testifies positively, however, that he abandoned his intention of using the automobile for hacking, that he never used his hacker's badge or card, that he never offered to use the automobile for carrying any person for compensation, and that the money received by him for carrying his aunt, his friend Burns, and others was paid without request or solicitation on his part.

Marks' statement, in his letter to the insurance company, that he had hacked his car three or four months before, and the receipt of money from the people transported, was some evidence that the automobile was a public conveyance and that the persons carried were passengers. On the other hand, the testimony of Marks that his intention to "hack" was abandoned, that he never used the hacker's badge or identification card, that he never at any time offered to use said automobile for carrying any person for compensation, and that the money paid to him by his aunt, Burns, and others was paid voluntarily, and without request or solicitation on his part, was some evidence that he was not engaged in the hacking business, and that his automobile was not a public conveyance. As there was evidence tending to show that the automobile was a public conveyance, and evidence tending to show that it was not, the determination of that issue of fact should have been left to the jury.

In our opinion, it was error to instruct the jury to find for the defendant, and the judgment entered on the instructed verdict is therefore reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.