# Wytheville

MAMIE C. CARTOS V. HARTFORD ACCIDENT AND INDEMNITY
COMPANY.

June 15, 1933.

Present, Holt, Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Q. C. Davis, Jr.,* and *Herman A. Sacks,* for the plaintiff in error.

*Rixey & Rixey,* for the defendant in error.

EPES, J., delivered the opinion of the court.

This is an action (instituted by notice of motion for judgment) brought by Mrs. Mamie C. Cartos against Hartford Accident and Indemnity Company, on an automobile liability insurance policy issued by the defendant, which contains the provision required by Acts 1924, ch. 339, page 504 (section 4326a, Michie's Va. Code, 1930). There was a verdict and judgment for the defendant, to which judgment a writ of error has been allowed to the plaintiff.

The policy sued upon was issued to I. N. Rubin and covered a Ford sedan owned by him, which was involved in an accident in which Mrs. Cartos was injured. Some time prior to the accident this car had been placed by Rubin in the possession and keeping of his employee, Willie Johnson (colored), for use in delivering circulars for Rubin in Norfolk and its vicinity. Johnson had taken Mrs. Cartos and her two children from Norfolk to Suffolk in this car and was bringing them back in it to Norfolk when the accident occurred. On this trip Johnson was engaged in a mission of his own, which had no connection whatever with his employment.

Mrs. Cartos brought an action against Rubin, as master, and Johnson, as his servant, to recover for the injuries received by her, which she alleged had been caused by John-

son's negligent operation of the car. She recovered a judgment against Johnson for $3,000, but was cast in her demand against Rubin. Execution was issued on the judgment against Johnson and returned unsatisfied.

She then brought this action to recover under the policy issued to Rubin the amount of that judgment. The theory upon which the action is brought is that Johnson was driving the car with the permission of Rubin, and that he (Johnson) was, therefore, insured under the "additional assured" provisions of the policy against liability for the injuries received by Mrs. Cartos.

The insurance company defended on the ground that the car was not covered by the policy at the time of the accident for two reasons: (1) Johnson was not driving the car with Rubin's permission. (2) At the time of the accident the car was being used for "the carrying of passengers for a consideration."

The evidence upon the first point is that Rubin had turned this automobile over to Johnson to be used by him for business purposes, but had impliedly permitted him to use it to some extent, at least, for his private purposes. Were this court sitting as a jury it might not have so found, but there is evidence from which a jury might draw the inference that Johnson was using the car at the time of the accident with Rubin's *implied* permission. There is, however, no evidence tending to show that he had his express permission.

On the second point there is no evidence tending to show that the car had been used for "the carrying of passengers for a consideration" on any occasion except on the trip on which Mrs. Cartos was injured. As to whether she and her children were being carried for a consideration on that occasion, the testimony of Mrs. Cartos is in direct conflict with that of Johnson, who was introduced as a witness by the insurance company.

Johnson's testimony was to this effect: On the Friday night before the accident Mrs. Cartos asked him if he would

take her to Suffolk, and he told her that he could not take her in the morning, but could take her "in the afternoon." On Saturday night he went back to the restaurant run by Mrs. Cartos' husband to get a "hot dog," and she asked him if he could take her Monday evening. He told her that he would, and she promised to pay him $2.00 for taking her there and back. On Monday afternoon about three o'clock he drove the car around to the restaurant, found her and her two little boys dressed up and waiting for him, took them to Suffolk, and was bringing them back when the accident occurred in which she was injured. He had no other reason for going to Suffolk that afternoon, and only went for the purpose of taking Mrs. Cartos as he had agreed. Though she had promised to pay him $2.00 for the trip, she had not done so.

Mrs. Cartos' testimony is this: When Johnson came into the restaurant Monday afternoon she and her children had dressed in preparation for a trip to Suffolk. They intended to go into Norfolk on a street car, and take a bus from there to Suffolk. Johnson saw them, asked her husband where they were going, and was told by him, "Going to Suffolk." Johnson then said: "I am going to Suffolk and I will be glad to take them along." He took them to her sister's home in Suffolk, and was bringing them back to Norfolk when the accident occurred. Neither she nor her husband had any conversation whatever with Johnson about paying him anything for carrying her and her children to Suffolk; and neither of them promised or expected to pay him, or paid him anything for the trip. There is, however, some of her testimony which gives color to Johnson's version of what occurred.

The material parts of the policy sued upon read as follows (the italics being ours) :

"HARTFORD ACCIDENT AND INDEMNITY COMPANY * * * (hereinafter called the Company) hereby agrees with the assured named in the declarations forming part hereof in respect of bodily injuries or death resulting therefrom, or

property damage, or damage by collision, accidentally sustained during the term of this policy by reason of the ownership or maintenance of any of the automobiles described in the declarations and the use thereof for the purposes therein set out, as follows:

\*       \*       \*       \*       \*       \*       \*       \*       \*

"THIS AGREEMENT IS SUBJECT TO THE FOLLOWING CONDITIONS:

"Additional Assured—A. This policy is extended to cover as an additional assured any person while legally operating any automobile described in the declarations or any person, firm or corporation legally responsible for its operation, *where the disclosed and actual use of the automobile is for 'pleasure and business' or 'commercial' purposes as defined in Item 8*, and the automobile is being so used with the permission of the named assured, \* \* \*. *Provided however*, (1) that this extension of the policy shall not enure to the benefit of a garage, automobile repair shop, sales agency or service station, or the proprietors, agents or employees thereof; (2) that the insurance under this policy shall be available first to the named assured, and the remainder, if any, to other persons entitled to benefits hereunder; (3) *that the defenses of the company against the named assured shall be available to it against any additional assured included hereunder.*

\*       \*       \*       \*       \*       \*       \*       \*       \*

"Exclusions—D. This policy shall not cover in respect of any automobile (1) while being operated by any person under the age fixed by law, or under the age of sixteen years in any event, notwithstanding any lower legal age limit for automobile operators; (2) while being used in any race or speed contest; (3) while being used for towing or propelling a trailer unless such trailer is identified and described in the declarations and additional premium is charged for such privilege; (4) *while being used for any purpose other than those specified in the declarations*, (5) while being used else-

where than within the limits of the United States (exclusive of Alaska, the Hawaiian, Philippine and Virgin Islands and Porto Rico) and the Dominion of Canada.

\*     \*     \*     \*     \*     \*     \*     \*     \*

"DECLARATIONS

\*     \*     \*     \*     \*     \*     \*     \*     \*

"8.  The described automobile is and will be used for *pleasure and business.*

"If the use is for pleasure and business or for commercial purposes it shall be understood as defined below in (a) and (b) respectively.

"(a)  *The term pleasure and business purposes* is defined as (1) the pleasure and business use of automobiles of the private passenger type including those which have been altered by the attachment of a small box body, *excluding renting, the carrying of passengers for a consideration,* demonstrating, testing, wholesale or retail delivery or the towing of any trailer unless such trailer is identified and described herein and additional premium is charged for it."

The court gave five instructions, designated as instructions A, 2, 3, 5 and 6.  Instruction 2 need not be further noticed.  Instructions A and 3 read:

"A.  The court instructs the jury that if you believe, from the evidence, that at the time Johnson injured the plaintiff he was operating the automobile with the express or implied permission of the insured, N. Rubin, mentioned in the insurance policy issued by the defendant; that the plaintiff obtained a judgment against Johnson for such injuries; that she has been unable to collect on said judgment because of Johnson's insolvency, then you must find for the plaintiff and fix her damages at the amount of said judgment, with interest thereon from the date thereon, and the costs, *unless you believe, from the evidence, that at the time she was injured she was being carried for pay or some other consideration."* (Italics ours.)

"3.  The court instructs the jury that the burden of

proof is upon the plaintiff to prove affirmatively by a preponderance of the evidence that the trip from Norfolk to Suffolk and return at the time of the accident was being made with the permission of Mr. Rubin. If, after hearing all the evidence, you are of opinion that the plaintiff has failed to bear this burden of proof, you should find for the defendant."

Instructions 5 and 6 told the jury it should find for the defendant, if it believed from the evidence that Mrs. Cartos "promised to pay Willie Johnson for taking her to Suffolk and bringing her back" (Number 5), or that "at the time of the accident Willie Johnson was carrying Mrs. Cartos for a consideration" (Number 6).

Instruction 3 was offered by the defendant. It was objected to at the time by the plaintiff on this ground, as it is stated in certificate of exception Number 3: "The jury, from reading this instruction, may have gotten the impression that even though the operator of the automobile had the general permission from the owner to use it, that before a recovery could be had in this case the plaintiff had to prove, by a preponderance of the evidence, that the operator thereof also obtained additional and express permission from the owner to make this particular trip from Norfolk to Suffolk and back."

The instruction is to be read in connection with instruction A. When so read, the assignment of error based upon this objection is without merit. It would have been better to have qualified the word "permission" by the adjective "implied," but the court committed no reversible error in giving the instruction in the form in which it was given.

The record does not show that any objections were in fact made to the giving of instructions A, 5 and 6 until after the verdict had been rendered and judgment entered. The plaintiff in her brief seeks, by statements *dehors* the record, to establish that the objections were made which the court (in its certificates of exceptions 2 and 4) states that the plaintiff "claims" were made; but the case is here to be

heard upon the record and not upon the statements of counsel.

Certificate of exception No. 2 sets forth that the plaintiff offered instruction A without the words at the end thereof which we have placed in italics, but that the court refused to give it in that form and amended it by adding the italicized words. It then certifies as follows:

"Counsel for the plaintiff claim that they objected to the amending of said instruction and of the granting thereof as amended, in lieu of instruction 'A' as tendered by them, on the ground that one act of making charge for transporting passengers would not convert the insured automobile from a pleasure car to a for-hire car, and they further contend that the court overruled their said objection and granted instruction 'A' as amended, and to which action of the court in amending said instruction and granting it as amended the plaintiff excepted. But the court does not recall the plaintiff making any objection to such amendment of instruction 'A,' and if such objection was made, it did not register on the court's mind."

Certificate of exception No. 4 contains these statements:

"Counsel for the plaintiff claim that they objected to the granting of this instruction [No. 5] because it was contrary to law and the terms of the policy sued on. By that instruction the jury was told that no recovery could be had if the plaintiff promised to pay the operator of the automobile for taking her to Suffolk and back, because one act of charging for the transportation of passengers did not convert the insured automobile from a private car into a for-hire car."

"Counsel for the plaintiff claim that they objected to the granting of this instruction [No. 6] on the ground that it is contrary to the law and the terms of the policy sued on, for the reason that it told the jury that no recovery could be had if the plaintiff paid a consideration to the operator of the car for her transportation, for the reason that one act of charging for the transportation of passengers did not

convert the automobile from a pleasure car into a for-hire car.

"And counsel for the plaintiff further contend that the court overruled their objections to the aforementioned instructions 5 and 6, and that they excepted to the action of the court in so overruling their objections, but the court does not recall any objections being made to the granting of instructions 5 and 6. And if such objections and exceptions were made they did not register on the court's mind."

These statements by the court are not a sufficient certification by the court that the objections which the plaintiff claims to have been made were in fact made. But, if the record be construed to certify that they were made, the court did not err in so amending instruction A or in giving instructions 5 and 6.

The policy in express terms excludes from the risks assumed by the insurer liability for injuries inflicted by the owner or operator of the car covered, while it is rented or is being used for *"the carrying of passengers for a consideration."* This, in the ordinary acceptation of the language of this provision, means that no risk is assumed by the insurer for injuries inflicted by the owner or operator of the car while it is being used for the transportation of persons under such conditions that the operator of the car owes to the person who is being transported the duty of a person who is carrying another for hire.

The duty owed by the operator to a person being transported for hire is much higher than that owed to a person who is not being transported for hire; and the risk assumed by the insurer where a car is being so used is much greater than in the case of an automobile which is being used for pleasure and ordinary business purposes.

The provision under consideration was doubtless inserted by the insurer to exclude such more hazardous risk. It is a reasonable provision both from the standpoint of the insurer and the insuring public. Unless this more hazardous risk, which is an exceptional risk in the case of a car used

for pleasure and business, is excluded from such policies, every insurer must pay a premium based upon the inclusion of such risks, even though he may not intend to and never does use his car in the more hazardous undertaking.

The plaintiff cites us to several cases in which, in construing *warranties* in fire insurance policies covering automobiles which are couched in language similar to the italicized words above quoted, the court has held that a single, occasional, isolated or casual use of the car for carrying persons for hire or compensation does not constitute a breach of the warranty which will avoid, or work a forfeiture of the policy; and that to have such effect the owner or operator must have made a business of using the automobile for carrying passengers for hire. *Crowell* v. *Maryland, etc., Co.,* 169 N. C. 35, 85 S. E. 37, Ann. Cas. 1917D, 50; *Commercial Union Assur. Co.* v. *Hill* (Tex. Civ. App.), 167 S. W. 1095, 1096; *Marks* v. *Home, etc., Co.,* 52 App. D. C. 225, 285 Fed. 959, 961. See, also, Berry Automobiles (4th ed.) 1579-80; Huddy, Ency. Auto. Law (9th ed.), vol. 13-14, 150-152.

In *Marks* v. *Home, etc., Co., supra,* the court goes so far as to hold that such a warranty has no application except where the car is used as a technical public carrier of persons. After quoting several definitions of the word "passenger," the court says: "From these definitions it is apparent that only those persons who are transported from place to place in a *public* conveyance can properly be denominated as passengers. Some of the decisions have held that a person may be a passenger, whether or not he pays or contracts to pay a fare * * *. But no authority which we have been able to find, or to which our attention has been called, holds that a passenger is one who is carried by any conveyance other than that which is held or offered for the use of the public." We do not understand the word passenger to have the limited meaning given to it by the court in the *Marks Case.*

The cases cited by the plaintiff are clearly distinguishable

from the case here under consideration. In all three of them the provision under consideration was an express promissory warranty that the car would not be used for the forbidden purpose. In the *Commercial Union Assurance Company Case* the policy expressly provided that "in the event of the violation of any warranty hereunder, this policy shall immediately become null and void," and a similar provision seems to have been contained in the policy under consideration in the *Marks Case*. Whether such express provision for forfeiture appeared in the *Crowell Case* does not appear. In the *Crowell Case* the warranty was that the car "will not be rented or used for passenger *service* of any kind for hire." (Italics ours.) This conveys the idea of a service held out to the public. It may be that the provisions under consideration in the *Marks Case* also used the expression "passenger service." In all three cases the forbidden use had ceased before the car was burned; and it was being sought to have the policy declared forfeited for a breach of the promissory warranty because of a prior prohibited use of the car which had no connection whatever with the destruction of it. In the instant case we are not concerned with a provision for a forfeiture, but with provisions excepting from the risk assumed under the policy liabilities incurred by the operator while the car is being used for a specific purpose.

Forfeitures are never favored either at law or in equity, and provisions for a forfeiture are strictly construed against the party for whose benefit they are inserted. It is said in *Lusk* v. *American Cent. Ins. Co.*, 80 W. Va. 39, 43, 91 S. E. 1078, 1079: "Courts look with disfavor upon attempts by insurers to evade liability by reliance upon forfeiture, and such a defense will not be permitted to defeat a just cause of action if there be reasonable ground on which to predicate a waiver of the forfeiture asserted." In such cases they have also shown astuteness so to construe clauses providing for a forfeiture as to prevent a forfeiture whenever the language used may, by strict construction, be con-

strued so as not to cover the acts upon which the forfeiture is claimed. For these reasons constructions given to language in clauses providing for forfeitures cannot properly be blindly followed as precedents in the construction of the same or similar language where not used in a forfeiture provision. Reasonable provisions in an insurance policy for excepted risks are subject to the rule that the language used in an insurance policy is to be construed more strictly against the insurer than against the insured; but such provisions are not subject to the same stringent and searching rules of strictness of construction that are often applied to forfeiture clauses for the avowed purpose of avoiding the application of a forfeiture.

It may well be, as is suggested in *Indemnity Ins. Co. of North America* v. *Lee,* 232 Ky. 556, 24 S. W. (2d) 278, that where persons who are guests in an automobile, or are engaged in a joint venture with the owner or operator of the car, put gas in the car or contribute to the cost of purchasing gas for the trip which they are making, the owner or operator of the car is not carrying passengers for a consideration within the meaning of the exception here under consideration. But wherever the facts are such that the operator of the car has cast upon him the duties and high degree of care that a person carrying another for compensation owes to the person so carried, the risk of liability for injuries arising from the negligence of the operator is excepted from the coverage by the provisions here under consideration. See in this connection *Juskiewicz* v. *New Jersey, etc., Ins. Co.,* 210 App. Div. 675, 206 N. Y. S. 566; *Bloom* v. *Ohio Farmers' Ins. Co.,* 255 Mass. 528, 152 N. E. 345. See, also, *Elder* v. *Federal Ins. Co.,* 213 Mass. 389, 100 N. E. 655.

We find no error in the judgment of the trial court, and it will be affirmed.

*Affirmed.*

GREGORY and CHINN, JJ., dissenting.