### REED v. BLOOM (MARYLAND CASUALTY CO. OF BALTIMORE, Garnishee).

### No. 6018.

District Court, W. D. Oklahoma.

July 16, 1936.

Murrah & Bohanon and Dudley, Hyde, Duval & Dudley, all of Oklahoma City, Okl., for plaintiff.

J. L. Gowdy, of Oklahoma City, Okl., for defendant.

Ames, Cocran, Ames & Monnet, of Oklahoma City, Okl., for garnishee.

VAUGHT, District Judge.

The plaintiff, Tom B. Reed, recovered a judgment against the defendant, Lloyd L. Bloom, in the District Court of Oklahoma county, Okl., on the 7th day of February, 1936, for injuries received in an automobile accident, which resulted from the driving of Bloom's car by Bloom, in which the plaintiff was an occupant. The car of defendant Bloom was covered by a policy of insurance in the garnishee company. After the rendition of said judgment, execution was issued against defendant Bloom and was returned: "No property found." Thereafter, garnishment proceedings were instituted against the garnishee, Maryland Casualty Company, a nonresident corporation, in aid of the execution, under sections 500 and 501, O.S. 1931.

The granishee answered said process and within due time filed its petition to remove to this court. The plaintiff filed his motion to remand, which motion was overruled. (D.C.) 15 F.Supp. 7.

The garnishee answered, denying liability on the ground that said insurance policy did not cover the character of accident on which the action is based. An issue has been joined on the answer of the garnishee and the cause comes on for hearing in this court on the answer of the garnishee, the reply thereto by the plaintiff, and the issue thus raised. A jury has been waived and the matter submitted to the court.

The evidence discloses that plaintiff Reed, defendant Bloom, Theo Green, and Claude C. White are engaged in the general life insurance business in Oklahoma City, and that on or about the 15th day of September, 1935, they were planning to attend an underwriters convention in Des Moines, Iowa. Reed had purchased a railroad ticket to Des Moines and White had made a reservation. On Saturday morning, September 14, Bloom decided he would drive to Des Moines in his own automobile, and notified

White, who was employed in the same office with Bloom, of his intention so to do, inviting White to go with him in the car. Bloom also learned that Reed and Green were going to the convention and invited them to go with him in his automobile.

The evidence discloses that nothing was said about expenses of any nature or character, except that Bloom advised White that they could occupy the same room and thus reduce expenses. Nothing was said by Bloom to either of the parties about any charge to them for the use of his car in transporting them to Des Moines. On Sunday morning, September 15, at an early hour they left Oklahoma City on their way to Des Moines, and stopped at Claremore, Okl., for breakfast, where Bloom also purchased gas and oil for his car. After breakfast, White, Reed, and Green, without the knowledge of Bloom, suggested to each other that they ought to contribute to the payment of, or pay for, the gasoline and oil, and when Bloom appeared, as they were getting into the car, these three gentlemen stated to Bloom that they felt they ought to pay for the gas and oil. Bloom stated he did not expect anything of that kind, but the three gentlemen insisted on paying him $10 each, which he reluctantly accepted.

Bloom testified that the approximate cost of gasoline and oil on the trip would have been $31.50 for gas and approximately $6 for oil, with $2.50 for storage, or a total of $40. He further testified that at the time he accepted the money from his associates on the trip, he had no thought of their paying more than their proportion, that is three-fourths, of the cost of the gas and oil. Nothing further was said about the expenses of the trip.

On the same day, September 15, as these parties were continuing their trip and at a point on United States highway No. 71 in Cass county, Mo., approximately two miles north of Peculiar, Mo., the car in which these parties were riding, while meeting a truck and while driving at a high rate of speed, ran off of the paved highway and into a truck parked on the left side of said highway, causing a collision, wrecking Bloom's car, and resulting in serious and permanent injuries to the plaintiff.

The judgment rendered in the state court of Oklahoma county was not attacked by the garnishee, but the defense of the garnishee is that the policy of insurance, written by the garnishee, provides: "This Policy does not cover: (1) any obligation assumed by or imposed upon the Assured * * * (if private passenger automobile) being used for rental or livery purposes or the carrying of passengers for a consideration * * *"—and that, since garnishee contends Bloom was carrying passengers for a consideration, the policy of insurance did not cover the accident in question.

The sole question to be determined in this case, therefore, is whether or not defendant Bloom was carrying the three persons as passengers for a consideration. In other words, did the voluntary payment by the three occupants of his car of the sum of $30, to pay for a portion or all of the oil and gas used on said trip, and the acceptance of same by Bloom, under the circumstances hereinbefore stated, constitute Reed, White, and Green passengers in Bloom's car for a consideration, to such an extent as to come within the exclusion provision of the insurance policy.

The evidence, while slightly conflicting because of certain statements that were given by Reed, Bloom, and White soon after the accident, in the judgment of the court fully supports the statement of the evidence as hereinbefore set out. The case, therefore, depends upon the construction of the expression "carrying of passengers for a consideration."

The plaintiff and the garnishee rely largely upon the same authorities. In many respects it is an open question. This portion of the insurance policy has never been construed by the Supreme Court of Oklahoma, nor by the Tenth Circuit Court of Appeals. It is necessary, therefore, to resort to authorities from other jurisdictions in order to reach a conclusion as to what is meant by this expression. The authorities seem to draw a distinction between a case where a private automobile, under contract and agreement, is used for the purpose of transporting persons as passengers for a definite sum, and where a private automobile is used incidentally for the transportation of persons, and the persons so transported contribute a sum for the purchase of oil and gas. In other words, if the owner of a private automobile agrees in advance to transport a passenger from one place to another for a definite sum, then that is recognized as being within the exclusions enumerated in the policy. But if the owner of the private automobile transports a person without any contract or agreement to pay for the oil or gas, as a consideration for the

transportation, and voluntarily pays to the owner of the car a sum which may or may not be sufficient to pay for the gasoline or oil used on the trip, another rule applies.

In Cartos v. Hartford Accident & Indemnity Co., 160 Va. 505, 169 S.E. 594, 598, the Supreme Court of Virginia says: "It may well be, as is suggested in Indemnity Ins. Co. of North America v. Lee, 232 Ky. 556, 24 S.W.(2d) 278, that, where persons who are guests in an automobile, or are engaged in a joint venture with the owner or operator of the car, put gas in the car or contribute to the cost of·purchasing gas for the trip which they are making, the owner or operator of the car is not carrying passengers for a consideration within the meaning of the exception here under consideration. But, wherever the facts are such that the operator of the car has cast upon him the duties and high degree of care that a person carrying another for compensation owes to the person so carried, the risk of liability for injuries arising from the negligence of the operator is excepted from the coverage by the provisions here under consideration."

In the Kentucky case referred to by the Virginia court, Pat Cooper,. a resident of Paducah, was the owner of a Dodge touring car. On May 31, 1938, the Indemnity Insurance Company of North America issued to him a policy by which it insured him for a period of one year against liability for personal injuries caused by the car to other persons within the limits of the United States. Indorsed on and made a part of the policy was the following item: "None of the automobiles herein described are or will be rented to others, or used to carry passengers for a consideration during the period of this policy." On July 1, 1928, Pat Cooper, the insured, left Paducah for Detroit, Mich., for the purpose of trading his Dodge touring car for a new car. He was accompanied on the trip by his son-in-law, M. F. Lee, his wife, Louise Lee, and their little child, and also by others. At a point in Illinois the car that Cooper was driving collided with another car, and M. F. Lee and his wife were injured. Lee and his wife brought separate actions against Cooper to recover damages, each alleging that the injuries were due to his negligence. The indemnity company received notice of the accident, filing and pendency of the suits, but it refused to defend. The suits proceeded to judgment. Thereafter, executions were issued on the judgments and

were returned: "No property found." Thereupon, the Lees brought separate actions against the indemnity company to recover on the judgments. The company, in each case, defended on the ground that the judgment was obtained by fraud and collusion, and that the Lees and the other occupants of the car had agreed to furnish.the gas for the trip, and that at the time of the accident Cooper was using the car to carry passengers for a consideration. The court refused to submit the question of fraud and collusion to the jury, but gave an instruction telling the jury, in substance, that, if they believed from the evidence at the time of the accident Cooper was using the car to carry passengers for a consideration, they should find for the defendant. Judgment was returned in each case in favor of the plaintiff. The Court of Appeals of Kentucky said: "It may be that, if Cooper had agreed with the Lees and others· accompanying him on the trip to take them along in consideration of their paying for the gasoline, the case would be one where the car was being 'used to carry passengers for a consideration,' but it not infrequently happens that guests on a long trip, without any agreement whatever with the owner, have an understanding among themselves that they will pay for gasoline, or pay for it without such understanding, because they do not feel like accepting so great a favor without contributing something to the expense, and, where this is the case, they cannot be regarded as passengers for a consideration."

In Askowith v. Massell, 260 Mass. 202, 156 N.E. 875, 876, the Supreme Court ·of Massachusetts held to a similar view, quoting from the opinion:

"The plaintiff, the defendant and three other persons, all residents in this commonwealth, were in the automobile at the time of the accident, which was driven by the defendant on their return from a fishing trip to Lake Parlin in the state of Maine. It was agreed that the expenses should be divided between them, and that each member also should pay a proportionate share of the cost for gasoline, oil and garage bills. The plaintiff paid his share of the operating expenses to the defendant, who also contributed his ·part and made no other charge for transportation. * * *

"The plaintiff asked the judge to rule that if he paid a proportionate share of·the operating expenses 'he was not a gratuitous guest of the defendant'; that if the plaintiff

was paying a share of the operating expenses 'as compensation for his transportation therein, that circumstance is to be considered in determining the defendant's duty of care toward the plaintiff'; that if the plaintiff was paying a share of the operating expenses 'as compensation for his transportation therein, he was a passenger for hire.' The requests were denied rightly. There was no evidence that the plaintiff was a 'gratuitous guest,' nor was he a passenger for hire. The automobile was not being operated under a contract express or implied that the defendant should be paid for transportation as a separate and distinct charge."

In Marks et al. v. Home Fire & Marine Ins. Co. of California, 52 App.D.C. 225, 285 F. 959, quoting the third syllabus, the court held: "Testimony by the owner of the insured automobile that he had abandoned his purpose of engaging in the hacking business, after securing his license and identification card, and that the only money he had received for carrying persons in his automobile was in the case of relatives or friends, who voluntarily paid him after the transportation, held sufficient to warrant the jury in finding he did not transport passengers in the automobile, so that it was error to instruct a verdict for the insurance company."

In Gross et al. v. Kubel et al. (Pennsylvania Indemnity Corporation et al., Garnishees), 315 Pa. 396, 172 A. 649, 650, 95 A.L.R. 146, the Supreme Court of Pennsylvania considered this question. In this case the defendant was a member of a basketball team, and on the occasion in question was carrying the members of the team under an agreement whereby all of his gas and oil was paid for, and also he was given a sum equal to the reasonable value for the use of his car. The court said, quoting from the trial court: " 'The arrangement for compensation under which he was carrying his passengers was more than a mere reimbursement for the gas and oil used by all in common on the trip. It went to the additional extent of compensating him for the use of the car. Had he been paid only a sum equivalent to the cost of the gas and oil used, a serious question might have arisen as to whether such a payment would have constituted a carrying for hire. The additional sum paid to him, however, brings the operation of the car squarely within the clause of the policy. * * *' "

The garnishee has cited a number of authorities which hold that, where the owner of the automobile agreed in advance to transport certain persons, and said persons so transported in his automobile had agreed to and would pay for the oil, gasoline, and storage, as a consideration for the transportation, the insurer under such circumstances would be relieved of any liability to the persons so carried under a similar provision as that relied upon by the garnishee in this case. The court is in thorough sympathy with that holding.

In this case there was no agreement or understanding of any nature or character except that the three occupants of the automobile advised the owner and driver of the same, at Claremore, Okl., that they felt they should assist in paying for the gasoline, and they made a contribution for that purpose. Under the authorities, however, which have been submitted to the court, the voluntary offer of the $10 each by the occupants of the automobile and the reluctant acceptance thereof by the owner and driver of the automobile, at Claremore, are not sufficient to constitute a contract either express or implied to carry passengers for hire, nor are these acts sufficient to establish the fact that the defendant Bloom was carrying passengers for a consideration.

The court, therefore, concludes that the garnishee is liable, under said insurance policy, to the plaintiff. Findings of fact and conclusions of law are herewith filed. An exception is allowed the garnishee to each of said findings and to the conclusion herein reached.