## OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited, v. MYERS et al.

District Court, M. D. North Carolina.
March 2, 1938.

Manly, Hendren & Womble, of Winston Salem, N. C., for plaintiff.

Trivette & Holshouser, of North Wilkesboro, N. C., for defendant.

HAYES, District Judge.

This is a suit brought in equity by the Ocean Accident & Guarantee Corporation, Limited, against W. S. Myers, I. M. Myers, and Dixie Myers, for the purpose of obtaining a declaratory judgment under the Federal Declaratory Judgment Act, Jud.Code § 274d, as amended, 28 U.S.C.A. § 400, to determine whether the plaintiff is liable to either of the defendants under an insurance policy of indemnity issued to the Bronart Company of Akron, Ohio, and to restrain each of the defendants from prosecuting any suit or action at law against the plaintiff on account of any injury that either of the defendants sustained when the car in which they were riding collided with a car belonging to the Bronart Company under which the defendants claim the Bronart Company were insured against public liability by the plaintiff. The defendant admits that the controversy exceeds the sum of $3,000, and that there is diversity of citizenship, and that the court has jurisdiction. The defendant I. M. Myers pleads a cross-action against the plaintiff and alleges that he sued the Bronart Company in the state court of Ohio and obtained a judgment against it, and that the plaintiff participated in the defense of the suit and continued its insurance policy in effect after the accident occurred, and that it waived any defense it had against his claim, and that it is estopped now to deny the validity of the judgment in favor of I. M. Myers amounting to $7,500, and this defendant prays affirmative relief and asks the court to grant the decree in his favor against the plaintiff for that amount, with interest and costs.

Bronart & Co. of Akron, Ohio, was engaged in transporting from Akron to Miami, Fla., a large number of automobiles which were to be used in the taxi business upon their arrival in Miami. In order to protect itself against liability on the account of accidents in which their

cars might be involved, the Bronart Company took out liability insurance with the plaintiff on cars covering their movement between the two points designated, and upon the arrival of the cars in Miami the blanket policy of insurance was canceled. The type of insurance carried was designated as a car for pleasure. The rate of premium charged was for a pleasure car. The policy contained an exclusion clause under the caption, "Exclusions," and under this head in bold letters were these words, "No insurance is granted by this policy," and under that caption are seven clauses relating to exclusions; the material one in this case being as follows: "(f) While any private passenger or commercial motor vehicle covered herein is being used for rental or livery purposes or in the carrying of persons for a consideration unless as respects each class of motor vehicles respectively, such use is specified in the declarations and proper premiums therein set forth." In the declaration it is stated that the motor vehicles described will be used only for pleasure, and again under this head there is this clause: "(c) The purpose of use as defined in (a) and (b) the foregoing shall exclude the renting or livery use of any disclosed motor vehicle and the carrying of persons for a consideration."

Among many other cars belonging to the Bronart Company covered by this policy was the Packard automobile which was involved in the accident upon which the litigation arose. The Bronart Company employed one Doris Goldman to drive this car for it from Akron, Ohio, to Miami, Fla., and agreed to pay her the sum of $5 to do so. She enlisted the co-operation of two of her friends who were mutually interested in the journey, and who were to associate with her and room with her in Miami, Fla., to go in with her and help provide the expenses for the trip. The three girls made up a common fund out of which they were to defray their expenses for gas and oil, storage, and their own lodging and board. They took the automobile of the Bronart Company and started to Miami. When they arrived in Cincinatti, Ohio, Miss Goldman learned through her aunt that some people were at the Cinant Hotel who wanted to go to Florida. She got in touch with these people at the hotel, and by arrangment with them went to the hotel to meet them. They discussed the matter, and Miss Goldman learned that these three people had the misfortune of breaking their car, and being unable to continue their journey to Miami, Fla., by way of automobile. After some discussion with Miss Goldman she agreed to take them, and they asked her how much she would charge, and she said that she would just leave that to them. Whereupon, they suggested that they would give her $10 each, which she accepted, and in consequence thereof Miss Goldman and her friends sent their luggage by express in order to make room for these three persons, who were strangers to Miss Goldman and her friends. When the car in question was being operated by Miss Goldman near Waycross, Ga., and on its way to Miami, it collided with the car in which the three defendants were riding and inflicted serious injuries on all three of the occupants. Each of them instituted a suit in the state court of Ohio, and I. M. Myers obtained a judgment thereon in the sum of $7,500, while the suit by the other two defendants is still pending. The plaintiff here investigated the accident, and, after obtaining information that Miss Goldman was hauling the three strangers from Cincinatti for a stated consideration of $30, disclaimed any liability on the ground that the policy specifically excluded any insurance to the Bronart Company when persons were being carried for a consideration. In the meantime the Bronart Company became insolvent, and, having notified the insurance company of the insolvency and its inability to defend the suit, the company agreed to enter upon the defense of the suit provided the Bronart Company would execute a nonwaiver agreement, and with that understanding the plaintiff here prosecuted the defense of the Myers suit in the name of and for the Bronart Company, as it was under obligation to do under the policy if there was any liability.

It is necessary first to determine whether the car in question was covered by the policy, or whether it was excluded from coverage on account of persons being carried therein for compensation. Many cases have been before the state and federal courts involving a similar question, and it seems to be the consensus of opinion that each case stands upon its special facts to determine whether or not persons who are riding in the vehicle are being carried as passengers or as persons for a consideration, within the

meaning and terms of the policy. The arrangement between Miss Goldman and her comrades in Akron, Ohio, where three girls were desirous of making a trip together to Miami, Fla., and all of them made up a common fund for the purpose of defraying all of the expenses, and with no idea of making any compensation by one to the other, is typical of that class of cases where it is held that such transportation does not violate the policy or come within the exclusion clause. Ocean Accident & Guarantee Corporation v. Olson, 8 Cir., 87 F.2d 465; Park v. National Casualty Co., Iowa, 270 N.W. 23.

■ While Miss Goldman signed a written contract with the Bronart Company that she would not permit the car to be used nor haul persons for a consideration on the journey between Akron, Ohio, and Miami, Fla., it seems to be well settled by the authorities that the consent of the owner for the use of the vehicle is not material or controlling on the question whether the car was being used for compensation so as to bring it within the exclusion clause of the policy. Mittet v. Home Ins. Co., 49 S.D. 319, 207 N.W. 49. The exclusion clause applies to the use that is being made of the car at the time of the accident, and it does not depend upon the question of "the unauthorized use" made by the insured's agent. The wording of the policy involved here is plain and unambiguous. It expressly provides that the policy excludes any coverage while the vehicle is being used for rental or livery purposes, or the carrying of persons for a consideration. There are cases which have been determined against the liability carrier on the ground that persons who were being carried at the time were not passengers within the meaning of the policy in question. Marks v. Home Fire & Marine Ins. Co., 52 App.D.C. 225, 285 F. 959 and Cartos v. Hartford Accident & Indemnity Co., 160 Va. 505, 169 S.E. 594. Persons may be carried for a compensation or consideration without necessarily being passengers in the general exertation of the term passenger.

■ Were the three strangers whom Miss Goldman picked up in Cincinatti persons who were being carried for compensation within the exclusion clause of this policy? Remembering that she was a complete stranger to all three of them, that there was no community of interest or joint and integrated interest in the journey, that

Miss Goldman and her friends who were interested with her in the trip agreed to transport by express at their expense their personal luggage in order to make room for three strangers, and that Miss Goldman declined to fix the price she would charge and left it to these three strangers to state what they would do, and that they thereupon paid her $10 each, which she accepted and undertook the transportation of them to Miami, Fla., it would take a very technical construction of these facts to hold that they did not constitute the carrying of persons in the automobile for compensation within the meaning of the exclusion clause. To so hold would do violence to the plain language of the policy and to the facts surrounding the carrying of such persons to Miami. State Farm Mutual Automobile Ins. Co. v. Self, 5 Cir., 93 F.2d 139. The defendants insist that since Miss Goldman did not deviate from the course which she originally planned, that she made the same trip in accordance with her previous arrangments, and that she carried these people, who had suffered misfortune, without making any charge, but that they gave her the money which she accepted, and that it took the sum received to pay the expense from Cincinatti to Miami, are plausible, but they are not sufficient to overcome the fact that these persons, being strangers, were being carried, not as a matter of accommodation, not as guests, but in consideration of the $30 which they paid. It is inconceivable that Miss Gold man would have gone to the trouble of going to the hotel to look these people up or to the express office and paying transportation charges to express their luggage to Miami if the money which was paid by the three strangers had not been a consideration bringing about these actions on her part. The conclusion is inescapable that she agreed and did carry these three persons in the automobile for compensation.

■ It is urged by the defendant that the spirit and purpose of liability insurance policies containing this and similar exclusion clauses is to safeguard the insurer against the additional loss on account of the increased liability which a carrier owes to persons being transported for hire, as explained in the case of Cartos v. Hartford Accident & Indemnity Co., 160 Va. 505, 169 S.E. 594. And from this premise the defendant proceeds to the conclusion

that such clauses have no application where the injuries are not inflicted upon such persons who are paying for transportation, but persons who are third parties and injured by the vehicle are supposed to be covered by the policy. This line of reasoning proceeds upon a false premise. If a third party, while walking across the street, is hit by an automobile and injured, he has a cause of action against the person who inflicted the injury. If such a person had liability insurance to protect him, then the injured party can reach the insurance carrier and hold it liable if the party against whom judgment is obtained fails to pay it. But the right of action against the insurance company depends upon its liability to the insured. This liability is a matter of contract and must be determined from the terms of the contract between the insured and the insurer. The injured party can acquire no greater right than the insured had against his insurer. Therefore, if the Bronart Company had paid the judgment to Mr. Myers and had brought a suit against the plaintiff in this case, its insurer, the liability of the insurer to the Bronart Company would depend entirely upon the provisions of the contract between the parties. It follows that Mr. Myers can have no greater claim against the insurance company than that which the Bronart Company could assert against it. The Bronart Company could not be successful against the insurer for reimbursement because the Bronart Company suffered the car in question to be used for the purpose of carrying persons for compensation, and under the express provisions of the policy all liability was excluded under such circumstances. Neilson v. American Mutual Liability Insurance Co. of Boston, 111 N.J. L. 345, 168 A. 436. There is an interesting discussion of the subject of "passengers for compensation" in the Michigan Law Review for November 1937. See, also, Gross v. Kubel, 315 Pa. 396, 172 A. 649, 95 A.L.R. 146.

There is no merit in the contention that the plaintiff has waived its right by defending the suit which I. M. Myers brought against the Bronart Company. The entire evidence shows the insurance company did not voluntarily defend the suit, and that it did it under circumstances which would estop the Bronart Company from asserting any plea of waiver. It steadfastly refused to participate in the matter unless and until it obtained a contract which purported to have been executed under the direction of the president of the company, and whether that authority was properly granted or not the company did not enter upon the defense of the case under any circumstances indicating an intention on its part to waive its position that its policy of insurance did not cover the loss. Cooley's Briefs on Insurance, Vol. 5 § 4457. Also, Beatty v. Employers' Liability Assurance Corp., 106 Vt. 25, 168 A. 919. A similar question was disposed of in the case of Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166.

Inasmuch as the exclusion clause exempted the coverage of the policy, the plaintiff is entitled to the relief prayed for, and a decree will accordingly be entered.