CONNECTICUT GENERAL LIFE INSURANCE COMPANY v. JOHN B. SKURKAY.

(Filed 22 February, 1933.)

1. **States A a—**

   In an action on a policy of life insurance executed in Pennsylvania the laws of that State in respect to the insurer's right to cancellation, involved in the action, determine the controversy.

2. **Insurance I b—In this case held: under Pennsylvania law the misrepresentation related to material risk as a matter of law.**

   In this action by the insurer to cancel a policy of health and accident insurance with disability benefits, there was uncontroverted evidence that the insured had other policies of insurance carrying a large aggregate amount of disability benefits, and that the insured, an intelligent man, in his application for the policy in suit, stated that he had no disability benefits under other policies. The insurance contract was executed in Pennsylvania. Applying the law of that State it *is held,* the misrepresen-

tation related to a material risk as a matter of law, and the insured having written the answers to the questions in the application himself, the doctrine of estoppel does not apply although the insurer's agent was present, knew the facts and saw the insured write the answers, and the insurer was entitled to a directed verdict.

CIVIL ACTION, before *Sink, J.* From BUNCOMBE.

On or about 10 April, 1930, the defendant, a resident of Masontown, Pennsylvania, made written application to the plaintiff for a policy of health and accident insurance and a policy was duly issued. The policy recites: "In consideration of the application for this policy, a copy of which is attached hereto and made a part hereof, and of the annual premium of $186.60, to be paid on, or before 17 April in each year during the continuance of this policy until thirty full annual premiums have been paid, does hereby insure John B. Skurkay, of Masontown, State of Pennsylvania," etc. The disability indemnity provided was $300.00 a month. The application contained the following questions: "Do you hereby agree that all the foregoing statements and answers, as written, are true, and that your acceptance of any policy issued on this application shall constitute the ratification by you of any corrections, additions or changes made by the company and noted in memorandum attached to policy when issued?" This question was answered in the handwriting of the defendant, "Yes." The application also contained the following: "I hereby declare that all the statements and answers to the above questions are complete and true, and I agree that they shall form a part of the contract of insurance applied for," etc. This portion of the application was signed by the defendant in his own handwriting. Question 26 of the application was as follows: "Do your average earnings, excluding income from investments, exceed the aggregate indemnity payable for disability under this and all other policies now carried by you?" This question was answered, "Yes." Question 27 involved two specific inquiries: (a) amount of life insurance; (b) disability benefit per month or week, accruing from other policies then in force. The defendant wrote the word "none" under the heading requiring information as to the amount of disability benefit payable per month or per week by the terms of such other policies. The policy of insurance contains certain standard provisions, among others, as follows: 2. "No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be endorsed thereon." G. "The copy of the application attached hereto is hereby made a part of this contract. The falsity of any statement in the application for this policy shall not bar the right to recovery hereunder unless such false

statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company, anything in the application herefor to the contrary notwithstanding."

The plaintiff, insurance company, brought an action against the defendant to cancel the policy, alleging that at the time the defendant made the application, that he had outstanding policies providing monthly disability benefits in the sum of $330.00, and that when the defendant in the application for the policy sued on, had stated in writing that he had no insurance with disability benefit that such statement was false and material. The defendant filed an answer denying that he had made any false statement and alleging that if there were any errors or mistakes contained in the written application "that all the facts were truly stated by this defendant to the agent who solicited and wrote said insurance, at and before said application was signed. . . . That the said agent presented to this defendant a blank form purporting to be an application for insurance, and at said time this defendant stated that he had insurance policies all of which were in the possession of a brother-in-law of defendant or in a safety deposit box of a bank with which said brother-in-law was associated, in a town some distance from Masontown, and that this defendant did not know whether the said insurance policies contained any disability benefits, and stated to the said agent that this defendant would have to get said insurance policies and look at them before he could tell whether they contained sick benefits; whereupon, the said agent of said insurance company, with full knowledge of all the facts, stated to this defendant that it made no difference, and instructed and directed this defendant to answer the said question as to disability benefits in said insurance policy as contained in said writing purporting to be an application for insurance, and that the answer inserted therein was also written at the request and direction of the plaintiff through its authorized agent," etc.

The cause was tried in the county court of Buncombe County. The defendant, Skurkay, testified that he was a physician living in Pennsylvania at the time of application for the insurance. He came to Asheville about November, 1930, and there was evidence tending to show that he was suffering with tuberculosis. He testified that the agent for the insurance company was named Koontz, and that Koontz came to his office and persuaded him to take out the policy of insurance in controversy. The defendant further testified that when he was filling out the application Koontz was standing "right back of me, reading the questions in the application. He came down them and I answered accordingly. He really told me what to put in, and I wrote it until we came to the ques-

tions under discussion. As to question 26: 'Do your average earnings, including income from investments, exceed the aggregate indemnity payable for disability under this and all other policies now carried by you?' I answered 'Yes.' Then he came to question 27: 'What is the total amount of insurance in force on your life?' . . . When we came to question 27, he said: 'How much life insurance do you carry?' I hesitated, had to think. I put down $10,000, $10,000, $13,000, and $6,000. When he came to question: 'Do you carry any disability benefits?' I started to put 'unknown,' as you can see. I said: 'I can't tell you whether I carry disability benefits or not. My policies are with my brother-in-law in the Peoples National Bank in a town thirty-eight miles away, where I keep my valuables.' He said: 'Since you answered question No. 26, 'Yes,' . . . that doesn't matter, put down none! So I put down 'none.' "

The evidence tended to show that the defendant was an intelligent man and had acted as medical examiner for insurance companies. He also testified that his income at the time was from $725.00 to $750.00 per month. On cross-examination he said: "When I came to fill out the application in this Connecticut policy I did not know for sure whether those other policies contained disability benefits. I thought they might have them in it."

There was evidence offered by the plaintiff tending to show that the amount of other disability benefits in force was considered by the companies in issuing policies, and that policies would ordinarily be issued "up to within sixty per cent of that income, provided the other requirements had been met," etc. The officer of plaintiff, who passed upon applications for accident and health insurance with disability benefits, stated that if he had known that the defendant had benefits aggregating $330.00 per month under other policies then in force, he would have declined the application.

The question was submitted to a jury and the verdict declared: (1) that the defendant had stated in the written application that other policies of life insurance covering his life "contained no disability benefits"; (2) that the plaintiff knew that the policies were not available to the defendant at the time of signing the application, and that defendant did not know whether they contained disability benefit provisions; (3) that the answer to question No. 27 in the application, relating to disability benefits, was not material to the risk; (4) that the plaintiff waived the incorrectness of the answer in the application; (5) that the policy was not fraudulently obtained; (6) that the defendant was entitled to recover $900.00 with interest upon his counterclaim for three months' benefit under the policy.

There was an appeal to the Superior Court from the judgment of the county court, and the trial judge overruled the exceptions and affirmed the judgment of the county court. From such judgment plaintiff appealed.

*John Izard and Harkins, Van Winkle & Walton for plaintiff.*
*C. H. Voorhees and B. M. Anderson, Hartford, Conn., of counsel.*
*R. R. Williams for defendant.*

BROGDEN, J. The contract of insurance was made in Pennsylvania, and must be interpreted in accordance with the law of that State. *Cannaday v. R. R.,* 143 N. C., 439, 55 S. E., 836; *Hall v. Tel. Co.,* 139 N. C., 369, 52 S. E., 50; *Tieffenbrun v. Flannery,* 198 N. C., 397, 151 S. E., 857. Consequently, in undertaking to interpret and apply the law of Pennsylvania, this Court is somewhat in the position of an innocent by-stander.

In arriving at the meaning and applicability of the Pennsylvania laws and decisions, the plaintiff offered as a witness an eminent attorney of that State and a graduate of the University of Pittsburgh Law School, who testified in substance that the answer to question No. 27 considered in the light of pertinent Pennsylvania decisions, was material as a matter of law. The defendant offered an eminent member of the Pennsylvania bar, also a graduate of the University of Pittsburgh Law School, who testified that the materiality of the question should be submitted to the jury, and further, that the knowledge of the agent, Koontz, was imputable to the plaintiff and constituted an estoppel. These eminent experts cite and rely upon the same Pennsylvania cases to support their conclusions. In other words, two legal experts, graduates of the same law school, and practicing in the same state, cite the same opinions, but draw conclusions therefrom as far apart as zenith and nadir.

However, both parties cite the case of *Koppleman v. Commercial Casualty Insurance Company,* 302 Pa., 106, 153 Atl., 121. This decision was rendered in 1930, and is one of the latest decisions upon the pertinent principles of law. Quoting from the *March case,* 186 Pa., 629, 40 Atl., 1100, the Pennsylvania Court said: "Misrepresentation or untrue statement in an application, if made in good faith, shall not avoid the policy unless it relate to some matter material to the risk. If it does relate to such matter, the act is inapplicable. If the matter is not material to the risk, and the statement is made in good faith, although it is untrue, it shall not avoid the policy. . . . Ordinarily questions of good faith and materiality are for the jury, and where the materiality of a statement to the risk involved is itself of a doubtful character, its

determination should be submitted to the jury. But it was never intended by the act of 1885, nor did that act assume to change the law in cases where the matter stated was palpably and manifestly material to the risk, or where it was absolutely and visibly false in fact." The *Koppleman case* is an illuminating utterance and assembles, discusses and distinguishes various decisions in Pennsylvania upon a variety of false statements or representations in application for insurance. Summarizing the governing principle the Court said: "In the instant case, the proof is not only undisputed, but it comes from the plaintiff himself. Under such conditions, whether it be a representation or warranty, if the statement made is material and admittedly untrue, there can be no recovery on the policy." The same general view of the Pennsylvania law is declared by the District Court of Pennsylvania in *Zeidel v. Connecticut General Life Insurance Company,* 44 Fed. (2d), 843. The *March case, supra,* holds specifically that existing insurance in another company at the time of an application is material as a matter of law. The Court said: "In respect to the first class of questions above enumerated, in which the materiality of them was submitted to the jury, we are clearly of the opinion that they were all material, and that the jury should have been so instructed." See, also, *Leadman v. Ætna Life Ins. Co.,* 163 S. E., 716, and *Southern Surety Company of New York v. Fortson,* 161 S. E., 679. The *Fortson case, supra,* involved a false statement as to the amount of disability insurance carried by the applicant.

In the case at bar the defendant, a skilled and intelligent man, wrote the answers to the questions in the application himself. The answer to question 27, so written by him, was false. He solemnly agrees "that all the foregoing statements and answers as written are true." Manifestly the amount of disability benefit carried by an applicant would enter into a determination of the advisability of the risk. If the agent had written the answers in the application, the doctrine of estoppel announced in *Evans v. Metropolitan Life Ins. Co.,* 294 Pa., 406, would doubtless apply; but the defendant, the sole and exclusive author of the statements in the application, furnished material information to the plaintiff, which, in the language of the Pennsylvania Court, "was absolutely and visibly false in fact." Therefore, as we interpret the Pennsylvania decisions, the plaintiff was entitled to have the trial judge give the following instructions duly requested:

(a) "The court has charged you that the policy in controversy contained additional provision 'G,' and the court charges you that under the law of Pennsylvania the answer to question 27 in the application is a warranty, and that a warranty cannot be waived by an agent such as solicited the policy in this case. The evidence is not disputed that the

answer to question 27 is false, and being a warranty as explained, it is your duty to answer the issues in favor of the plaintiff."

(b) "That under the facts in this case and all the evidence, the court instructs you that under the law of Pennsylvania question No. 27 was material to the risk, and you will answer the third issue 'Yes.'"

The exceptions of the plaintiff to the failure of the trial court to give the foregoing instructions is sustained.

Reversed.