Hillsborough, }
Jan. 5, 1937. }

MARYLAND CASUALTY CO. *v.* JOSEPH E. MARTIN *& a.*

*Hughes & Burns (Mr. Burns* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Wm. J. Starr, Jr.,* orally), for certain defendants claiming liability.

*Irving E. Forbes* and *Paul J. Doyle (Mr. Doyle* orally), for other defendants claiming liability.

ALLEN, C. J.   I. Certain non-resident defendants were served with process outside the state and have entered no appearance.   No

valid decree in the suit determining their rights can be made. They are beyond the court's jurisdiction and have not submitted to it. No conditions of status exist, and no property or *res* in which they may be interested and over which the court has jurisdiction is a subject-matter of the suit. While a debt may have the situs of the debtor and be property there (*Robinson* v. *Carroll*, 87 N. H. 114), the issue here is not of the rights of claimants to property but whether the claim of right has merit. The inquiry is one solely of personal contractual liability. The declaratory judgment statute is not interested in such an inquiry so far as to create jurisdiction over non-residents not locally served with process and not submitting voluntarily to the court's actual jurisdiction. If it had so wide a designed scope, it would be ineffective therefor. Due process does not permit one denying himself to be a debtor to compel, by service outside his state, a non-resident claiming to be a creditor to have the liability adjudicated in the courts of that state. *Pennoyer* v. *Neff*, 95 U. S. 714; *Baker* v. *Company*, 242 U. S. 390, 401; *McDonald* v. *Mabee*, 243 U. S. 90. The jurisdictional issue is the same whether the plaintiff claims or denies liability.

II. Other non-resident defendants have appeared specially to raise the issue of jurisdiction but have here argued the merits of the main issues in the litigation. By so doing they have yielded to the jurisdiction and are personally in court. *Dolber* v. *Young*, 81 N. H. 157, and cases cited. They had the right to a decision of the jurisdictional issue in advance of further participation in the suit, but they have not seen fit thus to proceed.

The fact that they have first contested the merits in this court is immaterial. The principle that one "cannot take the chance of succeeding on any other objection to the case made against him, and at the same time reserve his exception to service or notice" (*Merrill* v. *Houghton*, 51 N. H. 61), is decisive against these defendants. Having made their special appearance general by opposing the plaintiff as though they were duly in court, they abandoned their right to say they were not. Their attempt to obviate this result by request that no consideration be given to their brief on the merits if the jurisdictional issue was to be thereby prejudiced, is vain. The proposal that a brief may be filed on a conditional basis invokes an innovation contrary to good practice. When a brief is filed, all of it is presented. It is submitted unreservedly, and the condition is not to be recognized. The attempt is as futile as that of avoiding the change from a special to a general appearance after action upon the merits

has been taken. The issue of jurisdiction is not only separate but also preliminary, and reasonable procedure demands that it be finally decided before other issues of the litigation are reached. Orderly course of litigation calls for a consecutive disposal of the issues. The undertaking not to be in court and at the same time take part in the trial of the main issues is one of inconsistency, and technique of pleading or practice is of no avail to validate it.

Nothing said herein is of bearing on a special appearance entered by one not subject to the jurisdiction for the purpose of defending his rights in property attached or of asserting his claim of interest in property or a *res* which is the subject of controversy.

III. The plaintiff asserts that the fact that it is not liable to the named assured establishes its right to a decree against the other defendants who are before the court. The policy is to be construed according to the law of Massachusetts. It was issued there, and even performance there, at least in some measure, was contemplated by it. *Seely* v. *Insurance Co.*, 72 N. H. 49, 54; *Cunningham* v. *Ferguson*, 81 N. H. 380; *Lord* v. *Roberts*, 84 N. H. 517, 519. By the Massachusetts law a policy insuring liability for casualty is one of indemnity; liability being established, the injured party may proceed directly against the insurer to collect his judgment against the insured. *Lorando* v. *Gethro*, 228 Mass. 181. An agreement or admission by the insured that the insurer is not liable is ineffective to determine the fact, as to persons injured. The insured being indemnified against liability, the protection of the indemnity extends to his judgment creditors as beneficiaries, whose rights may be waived or surrendered only by themselves. Hence, although they may have no rights superior to those of the insured, he has no authority or agency to impair or destroy such as they do have. The doctrine of privity is of no aid to the plaintiff. The policy with the law controlling it determines the respective rights of the insured and of parties injured by him. The extent or conditions of the insurance may be affected by the insured's action and may be dependent upon it, but the insurance being ascertained, the rights of claimants become fixed and beyond his control.

The Massachusetts law is understood to be unaffected by subsequent legislation for compulsory motor vehicle insurance, and accords with the local rule declared in *Sanders* v. *Insurance Co.*, 72 N. H. 485. There was no occasion for any claimant against the defendant Martin to obtain leave to appear for him in order to avoid loss of the claimant's rights under the policy.

IV. The problem of coverage remains. The policy consists of two parts. One is of Massachusetts statutory coverage. The other is of coverage outside Massachusetts. By a paragraph entitled "exclusions" the second part is stated not to cover various obligations and uses, including use for "rental or livery purposes" or "the carrying of passengers for a consideration," unless such use is stated in the policy declaration. The use there stated is for "private uses," including business calls.

Martin for some time drove his car back and forth between Lowell, Massachusetts, where he resided, and Manchester in this state, where he worked. While thus driving he carried with him a number of other workmen, there being six at the time of the accident. The trial court has found that he was paid some consideration by them as "a contribution by agreement of all concerned, toward the expense of the operation" of the car.

The finding is construed to mean that the agreement for contribution was one of contractual liability. This is confirmed by the reported evidence on which the finding was made and which must therefore have been accepted. The two witnesses who testified on the subject agreed that Martin had his car registered on the strength of the promise of some who rode with him that they would ride and would share the operating expense of the car. One witness called the agreement a guaranty. While he testified that the driver "couldn't have forced us to pay him," he also testified that he had no right to ride unless he did pay and that at the time of the accident he was paying for his transportation. The evidence, if believed at all, as it was, showed a business trade, those who rode thereby providing for their own transportation expense and the owner thereby enabling himself to drive back and forth at reduced expense. He enjoyed a pecuniary gain and profit from the arrangement in the lessened net cost of operating his car. He was hired to carry, whether or not his hire was profitable in the sense of money making rather than money saving.

The law of Massachusetts, according to which the policy is to be interpreted, is found to hold the driver uninsured at the time of the accident. The situation is almost identical in the pertinent features with that considered in *Sleeper* v. *Insurance Co.*, 283 Mass. 511. There the driver agreed to take the plaintiff and another on a trip upon payment of "enough to pay for his gas, oils and meals." He received $8 and his meals. The exclusion clause in the policy was with verbal differences the same as that in the case here. "Used

for renting or livery use of the carrying of passengers for a consideration" was the language there. The court held that there was such transportation, saying that "whenever there is a contract, based on valuable consideration, having as its main purpose the carrying of passengers, the insurer under the form of policy in this case does not undertake to indemnify the owner or operator against liability for an occurrence during the journey covered by the contract." It was also held in the case: "The commercial adequacy or inadequacy of the consideration, or the want of profit to the owner or operator, is immaterial under the terms of the policy." And the case treats all who pay in some way for their riding as "passengers," as the word is used in the policy.

This is the latest Massachusetts case to which attention has been called, except that of *Perkins* v. *Gardner*, 287 Mass. 114. In that case the facts do not parallel those of the *Sleeper* case. Under a friendly accommodation the owner's mother with his permission drove the plaintiff on a trip to make some business calls. Another member of the owner's family accompanied them. The plaintiff paid for gas, oil and lunches. It was held that he did not thereby hire the car. Neither the driver nor the owner derived any benefit "in the performance of such an undertaking." As said in *Baker* v. *Hurwitch*, 265 Mass. 360, the evidence "falls short of showing any contractual duty between the parties or any legal benefit conferred by the plaintiff upon the defendant [driver] at the latter's request."

The case of *Askowith* v. *Massell*, 260 Mass. 202, cited by counsel, is not of assistance. The case arose out of an accident in Maine and the law of that state was a matter of ascertainment. On the issue that the riding was for hire, the opinion is *dictum*. The case throws no light upon the Massachusetts law.

Further support for the plaintiff's position is found in the case of *Loftus* v. *Pelletier*, 223 Mass. 63. The plaintiff there was a district nurse. The defendant was a doctor and drove her to visit a patient. It was held that if her ride was an incident of her contract of employment, she was a passenger carried for hire.

In general, the Massachusetts cases draw the line between riding under a business arrangement which amounts to a contract supported by a legally sufficient consideration and riding where payment therefor in some form is not a legal obligation. Expense sharing is not by and of itself a test of contractual liability. One may be a guest if he does make some contribution to the expense of travel. But if a rider is carried upon an understanding of a business character

that he is to pay, clearly the elements of a contract exist. He has hired transportation and on riding becomes a passenger.

The plaintiff and those riding with him were not engaged in a common enterprise either under local or under Massachusetts law. *Bowley* v. *Duca*, 80 N. H. 548; *Vidal* v. *Errol*, 86 N. H. 1, 7; *Noel* v. *Lapointe*, 86 N. H. 162, 164, 165; *Loftus* v. *Pelletier*, 223 Mass. 63; *Jackson* v. *Queen*, 257 Mass. 515; *Labatte* v. *Lavallee*, 258 Mass. 527. The suggestion that there is a class of cases consisting of expense sharing and common enterprises between and distinct from those of gratuitous travel and those of carrying passengers for profit or hire finds no support in the Massachusetts decisions.

The plaintiff is entitled to a decree against all defendants except non-residents not locally served with process and not appearing.

*Decree accordingly.*

PAGE, J., was absent: the others concurred.