**MYERS et al. v. OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited.**

**No. 4341.**

Circuit Court of Appeals, Fourth Circuit.

Oct. 19, 1938.

Eugene Trivette, of North Wilkesboro, N. C., and J. E. Holshouser, of Boone, N. C. (J. M. Brown, of North Wilkesboro, N. C., on the brief), for appellants.

B. S. Womble, of Winston-Salem, N. C. (W. M. Hendren and I. E. Carlyle, both of Winston-Salem, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

In this case the federal district court for the middle district of North Carolina, rendered a declaratory decree (28 U.S.C.A. § 400) that the appellee, an automobile liability insurer, was not liable under its policy for an automobile collision accident occurring on January 6, 1935 near Waycross, Georgia, in which the appellants were injured. The policy was issued to the Bronart Company of Akron, Ohio, and covered a Packard Club Sedan, which, at the time of the accident, was in charge of its agent who had been employed to drive it from Akron, Ohio, to Miami, Florida, where the Bronart Company was engaged in renting cars or furnishing taxicab service. The decree as to non-liability was based on an "exclusion" clause of the policy which provided that:

"No insurance is granted by this policy—(f) while any private passenger or commercial motor vehicle covered herein is being used for rental or livery purposes or *the carrying of persons for a consideration.* Unless as respects each class of motor vehicles such use is specified in the Declarations and proper premium therein set forth." (Italics supplied)
In this case such use was not specified in the policy nor was the proper premium therefor set forth. The district judge found as a fact that at the time of the accident three persons were being carried in the automobile for a consideration.

At the time of the collision the appellants in this case, W. S. Myers, I. M. Myers, and Dixie Myers, were riding in a Plymouth automobile involved in the collision, and all sustained personal injuries for which they subsequently brought suit against the Bronart Company in Ohio, where I. M. Myers obtained a judgment for $7500, the cases of the others, W. S. Myers and Dixie Myers, not yet having been tried. The judgment was affirmed on appeal. Under the Ohio statutory law (Gen.Code, § 9510, par. 4) the insurer in this case became directly liable on its policy for the payment of this judgment, without the necessity of an independent suit (Venditti v. Mucciaroni, 54 Ohio App. 513, 8 N.E.2d 460, Ohio Court of Appeals); but only if the insurer was legally liable under the policy conditions to the insured, the Bronart Company. Stacey v. Fidelity & Casualty Co., 114 Ohio St. 633, 151 N.E. 718; Venditti v. Mucciaroni, supra; Ocean Accident & Guarantee Corp. v. Schroeder, 6 Cir., 48 F.2d 727; Storer v. Ocean Accident & Guarantee Corp., 6 Cir., 80 F.2d 470; Ocean Accident & Guarantee Corp. v. Lucas, 6 Cir., 74 F.2d 115, 98 A.L.R. 1461; New Jersey Fidelity & Plate Glass Ins. Co. v. Love, 4 Cir., 43 F.2d 82; Richards on Insurance (4th Ed.) s. 505; Couch Cyc. Ins. Law. s. 1175d, p. 4187, note 23; Coleman v. New Amsterdam Cas. Co., 247 N.Y. 271, 160 N.E. 367, 72 A.L.R. 1443; Sleeper v. Mass. Bonding & Ins. Co., 283 Mass. 511, 186 N.E. 778.

Thereafter, and before any proceedings by I. M. Myers against the insurer in Ohio, the latter brought suit in the

district court for North Carolina against the Myers who are citizens and residents of that State, to obtain the declaratory decree of non-liability and to enjoin them from proceeding against the insurer. The defendants filed answers making no objection to the jurisdiction of the court, and not opposing the relief sought on procedural grounds (see Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321, 325), but contending that the policy did cover the particular accident, and I. M. Myers set up counterclaims for $7500 against the insurer. The jurisdiction of the district court was based only on diverse citizenship. In the pleadings and proof the Myers are described only as "residents" of North Carolina, but on the attention of counsel being called to the technical insufficiency of this, an amendment was here made without objection which described the appellants as citizens of North Carolina, the appellee, The Ocean Accident and Guarantee Corporation, Ltd., being an alien corporation.

The controlling facts in the case, no material part of which are in dispute, were specially found by the district judge. The policy dated December 7, 1934, while executed in New York, was countersigned and delivered in Ohio. It was a blanket policy of automobile liability insurance which covered particular cars as described, for respective premiums, when duly reported to the Company and the policy accordingly so endorsed. An endorsement was duly made on this policy which appropriately described the particular automobile as covered by the policy from January 3, 1935. The Bronart Company had its principal office in Akron, Ohio, but was engaged in Miami, Florida, in renting automobiles for use as taxicabs or otherwise. For this purpose it bought numerous automobiles in Michigan or elsewhere and had them driven by employes to Miami. To cover its possible legal liability to third persons which might occur *during this transit*, it procured from time to time endorsements on the blanket policy to cover particular cars as purchased and driven from Ohio to Florida. In the insured's "declarations" attached to the policy it described such automobiles as used for "pleasure" purposes; the term "pleasure" being defined as "personal pleasure and family use including

business calls"; but *excluding* the "renting or livery use of any disclosed motor vehicle and the carrying of persons for a consideration". The general liability assumed by the policy (within the maximum limits of $5,000 for injury to any one person and $10,000 for any one accident) was to pay for the insured's legal liability to others for bodily injury and property damage and to defend the insured against suits for such damages and to pay the expenses thereof.

On January 2, 1935, the Bronart Company made a written agreement with Doris Goldman, a young woman 23 years of age, to safely drive the automobile from Akron to Miami, leaving January 3rd, and the automobile to be delivered to destination on or before January 9, 1935. She was to be paid $5.00 upon arriving at destination, but after the accident terminated the trip she was paid $20.00 instead of $5.00, for what reason was not disclosed in the evidence. The contract provided that "it is agreed between the parties that said employe will not transport or carry in the said motor vehicle any passenger for hire or for any consideration whatsoever at any time he (she) is operating said motor vehicle".

Doris Goldman was going to Florida to sing in a Broadcasting Station. Before leaving Akron she arranged with two of her girl friends to go with her in the automobile, and the three of them contributed to a common fund in her charge for the purpose of paying their expenses on the trip, including the cost of oil and gasoline for the car. When they reached Cincinnati on the evening of January 3rd, the three young women called upon a Mrs. Schaeffer, an aunt of Doris Goldman, and while there learned from Mrs. Schaeffer that certain other friends or acquaintances of the latter, a Mr. and Mrs. Manoff and a young man named Johnnie, were then in Cincinnati on their way to Florida from Detroit, Michigan; that their Cadillac car in which they had intended to make the trip had broken down; and, as they desired to continue the journey they inquired if they could go with Doris Goldman in the car she was driving. These three persons were entire strangers to Doris Goldman and her two friends, but, at their request, she drove to their hotel to meet them and after some negotiations, agreed to take them and their baggage to Florida in the Packard car.

'The arrangement is described by the district judge in his findings of fact as follows:

"When these parties asked Miss Goldman how much they were to pay she said it was entirely up to them; and they suggested $10. each, and she accepted it and put the $30. into the pool out of which she made disbursements for gas and oil and other expenses of the trip. In order to make room for three persons and their baggage the three girls sent part of their baggage by express. Payment was made to Miss Goldman in Cincinnati and she put it into the general fund previously provided by her and her two friends."
It further appeared from the proof that Mr. and Mrs. Manoff and Johnnie were to pay their own personal expenses in addition to the $30. paid to Miss Goldman. She made no change in her intended route to Florida by reason of taking the Cincinnati passengers.

The automobile collision occurred on January 6, 1935, near Waycross, Georgia. According to the apparent weight of the evidence, at the time of the accident Johnnie was driving the car with Doris Goldman and one of her friends also sitting on the front seat, Mr. and Mrs. Manoff, and the other friend of Doris Goldman riding on the rear seat of the automobile, but there was some evidence that Doris Goldman was then driving. All three of the Myers sustained personal injuries. The Packard car was abandoned and the occupants proceeded by railroad to Florida. The Manoffs and Johnnie made no demand for a refund of the money they had paid for their transportation. The insurer was notified of the accident, investigated it, and with reasonable promptness denied liability by reason of the exclusion clause of the policy. Thereafter and shortly before the trial of the Myers suit against the Bronart Company in Ohio, it advised the insurer that by reason of its financial condition it was unable to incur the expense of actually defending the suit and suggested that the insurer should take over the defense. And this the Company did, but only after the execution of a non-waiver agreement by the Bronart Company.

In a carefully considered opinion the district judge held that the policy did not cover the injuries sustained by the Myers, by reason of the exclusion clause; that the plaintiff was entitled to a declaratory decree to that effect; and that the defendants should be enjoined from prosecuting their claims against the insurer. We are of the opinion that this conclusion was correct.

■ In approaching the construction of the language of the policy, the first problem lies in the field of conflict of laws. The case was tried in a federal district court for the State of North Carolina, where the jurisdiction was based on diverse citizenship alone; but the proof shows that the policy was countersigned and delivered and first took effect in the State of Ohio. In such a situation the question might arise as to whether, for the interpretation of the policy, we should apply the applicable doctrine of conflict of laws as determined by the federal courts or by the decisions of the North Carolina court. A similar question was noted but not decided by the Supreme Court in Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 208, 58 S.Ct. 860, 862, 82 L.Ed. 1290 (decided shortly after Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487) where, in note 2, it was said:

"Under the general doctrine the interpretation of an insurance contract depends on the law of the place where the policy is delivered. Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, at page 339, 55 S.Ct. 154, 156, 79 L.Ed. 398. We do not now determine which principle must be enforced if the Pennsylvania courts follow a different conflict of laws rule."
It is, however, unnecessary to determine the question in this case because both by the federal and North Carolina decisions it is clear that the policy should be interpreted in accordance with the law of the State of Ohio. Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 339, 55 S.Ct. 154, 156, 79 L.Ed. 398; Northwestern Mutual Life Ins. Co. v. McCue, 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419, 38 L.R.A., N.S., 57; Beale, Conflict of Laws, Vol. 2, s. 332.40; Kessler v. Mutual Life Ins. Co., 177 N.C. 394, 99 S.E. 97; Dixie Fire Ins. Co. v. American Bonding Co., 162 N.C. 384, 78 S.E. 430; Connecticut Gen. Life Ins. Co. v. Skurkay, 204 N.C. 227, 167 S.E. 802; Cannaday v. Atlantic Coast Line R. R. Co., 143 N.C. 439, 55 S.E. 836, 8 L.R.A,N.S., 939, 118 Am.St. Rep. 821; Wilson v. Supreme Conclave, 174 N.C. 628, 94 S.E. 443.

■ The most general and indeed elementary rule for the construction of in-

surance contracts is that where the language and meaning of the policy is clear and unambiguous it is to be understood in its plain ordinary and popular sense; but in case of ambiguity, that construction is to be adopted which is most favorable to the insured. United States Fidelity & Guaranty Co. v. Guenther, 281 U. S. 34, 37, 50 S.Ct. 165, 166, 74 L.Ed. 683, 72 A.L.R. 1064; Imperial Fire Ins. Co. v. Coos County, 151 U.S. ·452, 463, 14 S.Ct. 379, 38 L.Ed. 231; American Life Ins. Co. v. Stewart, 300 U.S. 203, 215, 57 S.Ct. 377, 380, 81 L.Ed. 605, 111 A. L.R. 1268; Stroehmann v. Mut. Life Ins. Co., 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732; Equitable Life Assur. Assoc. v. Deem, 4 Cir., 91 F.2d 569, 571, certiorari denied, 302 U.S. 744, 58 S.Ct. 146, 82 L.Ed. 575. This rule prevails in Ohio as well as elsewhere. Olmsted v. Metropolitan Life Ins. Co., 118 Ohio St. 421, 161 N.E. 276; Great American Mut. Indem. Co. v. Jones, 111 Ohio St. 84, 144 N.E. 596, 35 A.L.R. 1023. There is no ambiguity in the exclusion clause of this policy. The words used are all current in every day use, and expressly exclude coverage not only while the motor vehicle covered by the policy is used for rental or livery purposes, but also while it "is being used for * * * the carrying of persons for a consideration". Applying this wording in its "plain ordinary and popular sense" to the facts of this case, it is too obvious to be denied that the insured automobile was at the time of the accident being used to carry three persons, the Manoffs and Johnnie, for a consideration.

It is however contended for the appellant that the word "consideration" in this policy clause should be given a technical construction which, under the facts, makes the exclusion clause inapplicable in this case, as a matter of law, and despite the findings of fact by the district judge. In support of, and in opposition to, this contention counsel for both parties have cited numerous decided cases, both federal and state, dealing with insurance exclusion clauses of this general purport, and applying them to the facts of the particular cases. In some the insurer has been held liable and in others not; but on examination it will be found that each case turned on the exact wording of the clause as applied to the particular facts. Prior to the argument in this court there had been no applicable decision of the Supreme Court of Ohio, but since then

counsel has called our attention to the case of Beer v. Beer, 134 Ohio St. 271, 16 N.E.2d 413 (decided July 27, 1938) which applies automobile liability policy provisions of similar general purport, though not of identical language, to a factual situation different in important features from the facts in this case. As previously indicated our decision must be based on the application of the principles announced in that case to the facts of this. But before more detailed consideration of the Beer Case, it will be helpful to briefly classify other relevant decisions cited by counsel, many of which are reviewed by the Supreme Court of Ohio.

When the exclusion clause prohibits "the carrying of *passengers*" for a consideration, a few cases have taken the view that the word "passengers" as so used includes only passengers transported by a *public* carrier; Marks v. Home Fire & Marine Ins. Co., 52 App.D.C. 225, 285 F. 959; Arms v. Faszholz, Mo.App., 32 S. W.2d 781; but more (including Beer v. Beer, supra) have held to the contrary; American Lumbermen's Co. v. Wilcox, D. C., 16 F.Supp. 799, 801; Sleeper v. Mass. Bonding & Ins. Co., 283 Mass. 511, 186 N.E. 778; Neilson v. American Mut. Liab. Ins. Co., 111 N.J.L. 345, 168 A. 436; Gross v. Kubel, 315 Pa. 396, 172 A. 649, 95 A.L.R. 146; Dziadosc v. American Cas. Co., 171 A. 137, 12 N.J.Misc. 205. On this point the Ohio case would be decisive for us, but in addition our decision in this case is not embarrassed by this conflict of authority over the scope of the word "passenger" as the word "persons" in the clause is a much more comprehensive term. State Farm Mut. Automobile Ins. Co. v. Self, 5th Cir., 93 F.2d 139, 140.

In other cases the issue has been whether the payment made by the passengers to the owner or driver of the automobile constituted a "consideration" within the meaning of the exclusion clause; and in many of them the test of liability or non-liability of the insurer has turned on the question whether the sum paid was only a proportionate part of the expenses of the trip for the driver and passengers, as where they were friends engaged in a joint enterprise for mutual pleasure or otherwise having a common object and purpose, the use of the automobile being only incidental thereto, or whether it was a definite sum paid by the passengers

for their transportation, as compensation or profit to the driver or owner of the car and not directly related to the expense of the trip. Where, looking at all the circumstances, the first condition was found to be the dominant nature of the transaction, a number of cases have held that the exclusion clause was not effective, because the payment did not constitute a consideration, within the meaning of the clause. Ocean Accident & Guarantee Corp. Ltd., v. Olson, 8 Cir., 87 F.2d 465; Reed v. Bloom, 15 F.Supp. 600; Indemnity Ins. Co. v. Lee, 232 Ky. 556, 24 S.W.2d 278; Park v. National Cas. Co., 222 Iowa 861, 270 N.W. 23, and United States F. & G. Co. v. Hearn, 233 Ala. 31, 170 So. 59, are in this category, as is also Beer v. Beer, supra. But where the facts showed the latter condition to prevail, the insurer has been held not liable. State Farm Mut. Auto Ins. Co. v. Self, 5 Cir., 93 F.2d 139; Jensen v. Canadian Indemnity Co., 9 Cir., 98 F.2d 469; Gross v. Kubel, 315 Pa. 396, 172 A. 649, 95 A. L.R. 146; Sleeper v. Mass. Bonding & Ins. Co., 283 Mass. 511, 186 N.E. 778; Orcutt v. Erie Indem. Co., 114 Pa.Super. 493, 174 A. 625; Mittet v. Home Ins. Co., 49 S.D. 319, 207 N.W. 49; Cartos v. Hartford Acc. & Indem. Co., 160 Va. 505, 169 S.E. 594; Neilson 'v. Am. Mut. Liab. Ins. Co., 111 N.J.L. 345, 168 A. 436; Dziadosc v. Am. Cas. Co., 171 A. 137, 12 N.J.Misc. 205, and Maryland Cas. Co. v. Martin, 88 N.H. 346, 189 A. 162, are illustrative of this latter class of cases. See, also, Vol. 36, Michigan Law Review, 147. In accordance with this distinction it would be possible to hold that the arrangement made between Doris Goldman and her two friends before leaving Akron would not be within the scope of the exclusion clause in this case; but by the same test it is clear that the subsequent arrangement made with the Manoffs and Johnnie was within the exclusion. The meeting of the two parties in Cincinnati was entirely fortuitous and unplanned; they were strangers theretofore and had no common interests or objectives save only that they were all going to Florida (a condition common to all passengers to a particular destination, although having no other relation to each other); the Cincinnati passengers obviously felt they should and did offer to pay for their transportation; their offer was accepted, thus constituting an agreement for their carriage before it began, and the amount they then paid was not a proportionate contribution to the common expenses of the whole party but a definite sum for the transportation of themselves and their baggage (not including their subsistence on the journey) which constituted added personal compensation or profit to Doris Goldman and her friends. Not only was this arrangement contrary to the literal wording of the exclusion clause but it also violated its purpose and intent by an increase in the risk in that the insurer might become liable to paying passengers for damages to them resulting from the negligent operation of the automobile. Cartos v. Hartford Acc. & Indem. Co., 160 Va. 505, 516, 169 S.E. 594; Sleeper v. Mass. Bonding & Ins. Co., 283 Mass. 511, 186 N.E. 778. Silver v. Silver, 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221, 65 A.L.R. 939. And in the instant case the danger of accident was increased by the riding of three persons on the front seat on a long journey, thus possibly somewhat impairing the efficiency of the driver of the car. The Bronart Company, the insured, evidently appreciated the importance of the exclusion clause, as it expressly provided in the contract of employment of Doris Goldman that she should not carry any passengers *at any time* for *any consideration whatsoever*.

Still other cases cited by counsel for the appellants have taken the view that the word "used" in policy conditions of this general nature implies an habitual as contrasted with a mere isolated or occasional use of the automobile for the prohibited purpose. Crowell v. Maryland Motor Car Ins. Co., 169 N.C. 35, 85 S. E. 37, Ann.Cas.1917D, 50; Maringer v. Bankers Indemnity Ins. Co., 288 Ill.App. 335, 6 N.E.2d 307; Commercial Union Assur. Co. v. Hill, Tex.Civ.App., 167 S. W. 1095; Wood v. American Auto Ins. Co., 109 Kan. 801, 202 P. 82. But these cases are distinguishable either on the policy wording or on the facts, or both. The Crowell and Hill Cases involved a promissory warranty in a fire insurance policy, not an exclusion clause in a liability policy, and the particular loss occurred after and not during the prohibited use. The Wood Case involved a fire policy where, however, the court found a violation of the warranty. In the Maringer Case, the word "used" appeared not in an exclusion clause but only in the assured's declaration that the automobile should not be used to carry passengers for a consideration, express or implied, and at the time

of the accident the occupants of the car other than the driver paid no consideration for the ride.

We are unable to adopt the view that the exclusion clause in this case applied only to situations where the insured automobile was habitually used for carrying persons for a consideration. The clause is not a promissory warranty which entails a forfeiture of the whole policy upon a violation, but merely excludes liability *while* there is a violation. It would be against the plain meaning of the wording to interpolate the word "habitual" by construction. It has been so held in a number of well considered cases, in dealing with policy clauses of like or very similar wording. State Farm Mut. Automobile Ins. Co. v. Self, 5th Cir., 93 F.2d 139; Sleeper v. Mass. Bonding & Ins. Co., 283 Mass. 511, 186 N.E. 778; Cartos v. Hartford Acc. & Indem. Co., 160 Va. 505, 169 S.E. 594; Mittet v. Home Ins. Co., 49 S.D. 319, 207 N.W. 49; Neilson v. Am. Mut. Liab. Ins. Co., 111 N.J.L. 345, 168 A. 436. Moreover it will be noted in this particular case that it was contemplated the insurance coverage would be effective for only six days, and in fact it was effective for only four days, on three of which the automobile was used for an excluded purpose, and contrary to the driver's contract which prohibited the carrying of passengers for any consideration *at any time*.

It is argued for the appellants that the insurer should be held liable because there was no causal connection between the breach of the exclusion clause and the accident, and particularly that there was no deviation from the planned itinerary on account of the transportation of the Cincinnati passengers. On the facts it is far from clear that their presence did not to some extent contribute to the accident, and it is clear enough that the risk was legally increased, save for the operation of the exclusion clause. But it was not necessary for the insurer to prove the causal connection. The rights dealt with in the case flow from a contract of insurance and not from a claim arising in tort. The policy suspended its coverage *while* persons were being carried for a consideration, irrespective of what happened during the suspension. Counsel for the appellants have cited a few cases which tend to support their position in this respect (McGee v. Globe Indem. Co.,

173 S.C. 380, 175 S.E. 849; Bailey v. United States F. & G. Co., 185 S.C. 169, 193 S.E. 638; Hossley v. Union Indem. Co., 137 Miss. 537, 102 So. 561); but the great weight of authority in accordance with the long well established principles of insurance law is to the contrary. Standard Auto Ins. Assoc. v. Neal, 199 Ky. 699, 251 S.W. 966, 35 A.L.R. 1468; Witzko v. Koenig, 224 Wis. 674, 272 N.W. 864, 867; Holland Supply Corp. v. State Farm Mut. Auto Ins. Co., 166 Va. 331, 186 S. E. 56, 57; United States F. & G. Co. v. Guenther, 281 U.S. 34, 50 S.Ct. 165, 74 L.Ed. 683, 72 A.L.R. 1064; Travelers' Protective Ass'n Co. v. Prinsen, 291 U.S. 576, 582, 54 S.Ct. 502, 504, 78 L.Ed. 999; Maryland Cas. Co. v. Friedman, 8 Cir., 45 F.2d 369; Adams v. Maryland Cas. Co., 162 Miss. 237, 139 So. 453; Richards on Insurance (4th Ed.) ss. 501, 147; 4 Couch Cyc. Ins. Law, s. 872; 6 Couch, s. 1269; Coleman Furniture Corp. v. Home Ins. Co., 4 Cir., 67 F.2d 347, 350; Provident Life & Accident Ins. Co. v. Eaton, 4 Cir., 84 F.2d 528, 531. And in many of the cases heretofore cited dealing with clauses of liability policies similar to the one in this case, where the insurer has been held not liable, there was no proof, and no suggestion of the necessity of proof, of any causal connection between the prohibited use and the damages occasioned. See State Farm Mut. Automobile Ins. Co. v. Self, 93 F.2d 139; Sleeper v. Mass. Bonding & Ins. Co., 283 Mass. 511, 186 N.E. 778; Cartos v. Hartford Accident & Indem. Co., 160 Va. 505, 169 S.E. 594. And it is immaterial in this case that the prohibited use was by the insured's agent without its knowledge and contrary to its instructions; and that the injured persons were not passengers in the insured automobile. Mittet v. Home Ins. Co., supra; Neilson v. Am. Mut. Liab. Ins. Co., 111 N.J.L. 345, 168 A. 436.

Our construction and application of the policy exclusion clause in this case is in accordance with the principles applied by the Supreme Court of Ohio in the case of Beer v. Beer, 134 Ohio St. 271, 16 N.E.2d 413, although the different facts of that case resulted in a different conclusion as to the insurer's liability. The relevant policy clause there applied was worded somewhat differently from the exclusion clause in this case. In that policy it was provided that—

. "The automobile described will be used for pleasure and business. (a) The terms "pleasure" and "business" is defined as personal pleasure and family use including calls. * * * (c) The purpose of use as defined in (a) and (b) aforegoing shall exclude the renting or livery of the automobile and the carrying of passengers for a consideration."

The insurer's defense was based on an alleged violation of the promissory warranty with respect to the "purpose of use" and not, as in the instant case, on a clear suspension of coverage *while* passengers were being carried for a consideration. The alleged breach of the policy there set up by the insurer was based on the following state of facts. The insured automobile owner and his two sisters paid visits to their father who was in a hospital in another city under an arrangement whereby the payment of expenses of the car for the trips was made by the sisters. On one of such visits an automobile accident occurred in which one of the sisters was injured and she thereupon sued and recovered judgment for damages against her brother, the insured automobile owner and driver. Beer v. Beer, 52 Ohio App. 276, 3 N.E.2d 702. Her recovery in the damage suit established that she was not a guest of her brother within the meaning of the Ohio statute, Gen.Code, § 6308-6, providing that there should be no recovery for—

" 'loss or damage arising from injuries to or death of a guest while being transported without payment therefor' unless such injuries or death are caused by the wilful or wanton misconduct of the owner or operator of. such automobile." 16 N.E.2d 415.

Subsequently a supplemental petition in the case was filed by the plaintiff against the Buckeye Union Casualty Company as the defendant's insurer; and in the latter proceeding it was held by the Supreme Court of Ohio, 134 Ohio St. 271, 16 N.E. 2d 413, reversing the lower court, that although the injured sister, the plaintiff, was not a guest of her brother in his automobile at the time of the accident, nevertheless under the particular facts of the case she was not in the status of a passenger being carried for compensation within the meaning of the policy clause. In the opinion for the court it was, among other things said:

"It must be conceded that, under the terms of this policy the use of the automobile for carrying passengers for a consideration is excluded from coverage and that there is no liability of the company if, under the facts disclosed by the record, the automobile was at the time in question being used in carrying passengers for a consideration.

"We are in accord with the proposition advanced by counsel for the casualty company that one may be a passenger for a consideration in a conveyance other than one operated by a common carrier. The argument that this phrase 'passengers for a consideration' has reference only to persons transported by common carriers has little support in reason or authority. On the contrary, it is quite well settled that one may be a passenger, for a consideration in an automobile which is ordinarily operated as a private conveyance. * * *

"It must be conceded that there is a division of authority in the construction and application of the clause in question. All are in accord upon the proposition that under the terms so employed the protection of the policy does not cover an automobile when used in carrying passengers for a consideration. The apparent divergence arises from the variety of the fact situations presented in the various cases."

The opinion then reviews many of the cases to which we have heretofore referred and particularly Sleeper v. Mass. Bonding & Ins. Co., 283 Mass. 511, 186 N.E. 778; Ocean Accident Guarantee Corp. Ltd., v. Olson, 8 Cir., 87 F.2d 465; Park v. National Cas. Co., 222 Iowa 861, 270 N.W. 23; Cartos v. Hartford Acc. & Indem. Co., 160 Va. 505, 169 S.E. 594; Gross v. Kubel, 315 Pa. 396, 172 A. 649, 95 A.L.R. 146, and others. As to the basis of distinction between those cases holding the insurer liable and those holding it not liable, the opinion quotes with approval the wording of the Olson Case as follows:

"The authorities, without dissent so far as we can find, hold that contribution by a person to the expense of a trip by automobile for the joint pleasure of the party, where the parties are friends or are related, is not 'consideration' or hire within the meaning of policy provisions such as those now before us. On the other hand, where the parties are strangers and the relation is a business one only, or the contribution is not re-

lated to the expense of the trip or exceeds the amount of the expense, the arrangement constitutes a carrying 'for a consideration' within the meaning of such policies."

Also from the Park Case the test is quoted as there expressed:

"It is apparent that the authorities quite generally concede that money passing from the passenger to the operator of a car, though associated with the carrying of the passenger, may or may not be a consideration for such carrying, within the meaning of a policy provision such as we are considering. In making the distinction the courts take into consideration not alone the bare transaction but all its surrounding circumstances, including among other things the status and relations of the parties one to another, the existence or lack of common interest, pleasure, or benefit in the making of the journey, and the relation of the amount of money to the actual costs of carrying."

The final conclusion in the opinion in the Beer Case was expressed as follows:

"Referring again to the undisputed facts in the case at bar, it is found that it comes within that class of cases where the parties joined in meeting the expenses of a trip made for their mutual interest, pleasure or benefit and where the purpose of the trip on the part of the owner of the automobile is not the carrying of passengers for compensation."

■ It seems clear from the Beer Case that whether the test of liability is expressed in the concluding words of the opinion in that case or as expressed in the approved quotations from the Olson and Park Cases, the insurer must be held not liable in the case now before us. The Cincinnati passengers were not friends but strangers to Doris Goldman and her friends and the two separate parties had no common objective, interest, pleasure or benefit in the trip, such as existed in the Beer, Olson and Park Cases. The payment that they made was not a proportionate contribution to the joint expenses of the whole party, but a definite sum for the transportation of themselves and their baggage alone and bore no definite relation to the actual costs of their carriage. On the contrary the facts of the instant case bring it very clearly within the classification made in the Olson Case reading:

"On the other hand, where the parties are strangers and the relation is a business one only, or the contribution is not related to the expense of the trip or exceeds the amount of the expense, the arrangement constitutes a carrying 'for a consideration' within the meaning of such policies."

It is urged that the insurer should be held liable in this case because the *dominant purpose* of the trip was not the carriage of persons for a consideration, and the arrangement with the Cincinnati passengers was merely incidental. But this construction of the exclusion clause in this policy would unwarrantably narrow the scope of its plain wording. It would force upon the insurer, contrary to its contract, liability for damages occasioned by negligent driving by an insured automobile owner, who, on trips for his own purpose, occasionally or even habitually picks up paying passengers who happen to have with him a common destination, but no other mutual interest or objective in the trip. The exclusion clause in this case is not limited to the carrying of persons for a consideration, as the dominant or inspiring motive for the trip, but excludes liability in all cases where passengers pay for their carriage, except where the circumstances, considered as a whole, show that the payment made to the owner or driver of the car does not constitute a "consideration" to him from the passenger, but rather a payment by the latter of his own share of the joint expenses of a trip in the purpose of which all the contributing members of the party have some common interest, other than merely to reach a common destination. Nor would the construction contended for be in accordance with the holding in the Beer Case, because, although the purpose of the trip as originally planned was not to carry passengers, nevertheless the paying passengers in this case had no mutual interest with Doris Goldman and her friends in the dominant purpose of the trip. Furthermore the construction suggested is clearly inconsistent with the insured's own understanding of the policy, as evidenced by its contract stipulation with its agent, that she should not carry passengers at any time for any consideration whatsoever.

■ The appellants submit the further contention that even if original non lia-

bility of the insurer is established nevertheless it was waived by its defense of the Ohio negligence suit. But this contention is without merit. The insurer promptly denied liability after its investigation of the case and has consistently thereafter maintained that position. In defending the suit it did not do so as the exercise of a right given to it under the policy contract, but only at the request of the insured and after the latter had stated its determination not to defend the case by reason of its insolvency, and then the intervention of the insurer occurred only after the parties had entered into a formal non-waiver agreement which expressly provided that the insurer did not "by so doing waive any rights under its policy and particularly the right to claim that the accident is not covered thereby", and that "nothing herein contained shall be construed to make said Insurance Company liable for any judgment that may be rendered in any of said law suits." These non-waiver agreements are a common incident of insurance litigation, and are valid and effective between the parties in the absence of action by the insurer inconsistent with the terms of the agreement. Richards on Insurance, pp. 206, 212; 7 Couch Cyc. Ins. Laws, s. 1562; Lockwood v. Aetna Ins. Co., 8 Ohio App. 444; Reinhart v. Great American Mut. Indem. Co., 25 Ohio N.P.,N.S., 331; Aetna Life Ins. Co. v. Maxwell, 4 Cir., 89 F.2d 988, 991; Neilson v. Am. Mut. Liab. Ins. Co., 111 N.J.L. 345, 168 A. 436; Neil Bros. Grain Co. v. Hartford Ins. Co., 9 Cir., 1 F.2d 904, 908; Western Cas. & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166, 169; Beatty v. Employers' Liab. Assur. Corp., 106 Vt. 25, 168 A. 919; 81 A.L.R. 1383, note; Orcutt v. Erie Indem. Co., 114 Pa. Super. 493, 174 A. 625. Some question is made by the appellants as to whether the non-waiver agreement was validly authorized on the part of the Bronart Company, but this is immaterial, as it is clear enough from the proof that the insurer relied on the effectiveness of the non-waiver as a condition to its participation in the defense of the suit. As the Bronart Company could not successfully rely upon a waiver by the insurer it is clear that the appellants in this case have no greater right. 95 A.L.R. 157. Another contention by the appellants as to waiver by the insurer, based on the alleged receipt and retention of the premium for the risk on the automobile, is not supported by the record, which fails to show that the premium for the particular car was paid.

It results that the decree should be and is hereby

Affirmed.